In the Matter of Niles.

# N. Y. COMMON PLEAS.

## In the Matter of George W. Niles, Assuming to Practice as an Attorney of this Court.

*An attorney at law debarred from practice, by reason of having been sent to state prison.*

Attorneys and counsellors at law are classed as judicial officers, and subject to removal or suspension by the courts in which they shall be appointed, " for deceit, malpractice or misdemeanor," on charges preferred and opportunity given for defense. But every office becomes vacant on the removal of the incumbent or his conviction of an infamous crime.

Where an attorney and counsellor at law is convicted and sentenced to the state prison for an infamous .crime, to wit: for extorting money from innocent persons by threatening, as attorney, to bring actions against them for alleged acts affecting their morals, &c., he ceases to be an attorney and counsellor under the operation of the statute, upon such conviction and his going to state prison. The statute declares that any one guilty of an infamous crime shall forfeit his office if he is sent to state prison.

*General Term, January* 13, 1875.

*Before* C. P. Daly, *Ch. J.*, Robinson *and* J. F. Daly, *JJ.*

Daly, *C. J.* — We are satisfied upon the evidence before us that Niles was removed by the supreme court from the office of attorney and counsellor on the 3d of February, 1851. The evidence of it is, that after Niles' conviction for the offense for which he was sentenced to the state prison, an order of the general term of the supreme court, together with a copy of his conviction, was served upon him, requiring him to show cause, at the next general term of the court, why he should not be removed, and that the motion was made and granted appears by the affidavit of Henry Bertholf, who was

then crier of the court, who swears that he was present in the court when N. B. Blunt, the district attorney, made the motion for the removal of Niles, and that it was granted. The fact further appears by the New York Herald of February 4, 1851, which gives a detailed account of what occurred in the general term on the previous day, February third — chief justice EDWARDS and justices EDWARDS and KING presiding — upon the hearing and granting of the motion removing Niles. In the New York Daily Tribune of February 5, 1851, it is stated, that on the previous Monday, February third, Niles was removed from the roll of attorneys and counsellors of the supreme court; that the motion was made by the district attorney, and that nobody appeared to oppose.

The papers upon which the motion was made are on file; but no order granting the motion can be found. After this long lapse of time, twenty-four years, the draft order, if one was made, may have been lost, destroyed or abstracted; of the entry of it I shall hereafter speak; but of the fact that the motion was made and granted there can be no reasonable doubt. It is further corroborated by the fact that like motions were made in this and in the superior court, and granted, as appears by the records of both courts.

In June, 1857, a motion was made in the supreme court that the order removing him be set aside as irregular and void, upon the ground that no charges had been served upon him, and that being in the state prison when the motion was made, he was unable to be heard in his defense. It was founded upon an affidavit of Niles, in which he swore that he was informed and believed that an order had been made and entered, at a general term of the court, on the 3d of February, 1851, depriving him of his right to practice as an attorney and counsellor. The motion was denied, the court holding that he had been duly served with a copy of the charges against him, and with the order to show cause; that he had had an opportunity of being heard in his defense, and that his removal from office was in all respects regular.

On the 30th of December, 1859, another application was made; the matter was referred to a referee, and on the 23d February, 1863, a formal order was entered declaring that the court declined to take any further action in the matter.

In February, 1870, Niles assumed to act as an attorney, and brought a suit in the supreme court. A motion was made to set aside the summons upon the ground that he was not an attorney, which motion judge INGRAHAM denied upon the ground that the papers were not complete, because they did not contain the order of the general term removing Niles. Judge INGRAHAM, as appears from his opinion, thought the motion was not made, by the defendants in that action, in good faith, as he had no copy of that order in his papers. An appeal was taken to the general term, judges BARNARD and CARDOZO presiding, and judge INGRAHAM'S decision was affirmed.

This decision neither declared that Niles had not been removed, nor was it a formal readmission of him as an attorney. It merely affirmed the decision denying the motion to set aside the summons for irregularity, as the papers did not contain the requisite proof of Niles' removal; i. e., a copy of the order removing him. That order, or an authenticated copy of it, was the official and best evidence of the fact; and as that was not produced, nor its non-production accounted for, the conclusion appears to have been that the moving papers were defective for the want of proper evidence of Niles' removal. That was the ground assigned by judge INGRAHAM in his opinion, and, as his decision was affirmed by judges BARNARD and CARDOZO, without delivering any written opinion, it may be assumed that that was the ground also of affirmance.

There is no such question before us. The order would necessarily have been entered in the minutes of the court, but we have the certificate of the clerk of the court that he has caused a search to be made for the rough as well as for the regularly engrossed minutes of the year 1851, and that neither

In the Matter of Niles.

can be found; the explanation of which, probably, is that three years afterward, on the 19th of January, 1854, the building in which the supreme court was then held was entirely destroyed by fire, a fire by which, as appears by the proof before us, a great many of the records of the court were destroyed. This sufficiently accounts for the non-production of the order of the court removing Niles. If the books in which the minutes of the general term of February 3, 1851, were kept were in existence, the order, I doubt not, would be found duly entered; but the probability is, as I have suggested, that they were destroyed in the fire. It was, as I suppose, the circumstance of the discovery of the destruction of the record evidence which emboldened Niles in 1870, sixteen years after his release from the state prison, to commence practicing again as an attorney and counsellor in all the courts, upon the assumption that he had never been removed.

The order notifying him to show cause was served upon him on the 8th of January, 1851. On the thirteenth of that month he was sentenced to the state prison, and on the third of February following the motion for his removal was made and granted in the general term. He had five days, at least, before his sentence, to procure counsel to appear for him upon the motion, if he wished to be represented upon it — which it is evident he did not, for the obvious reason that he had nothing to say in opposition to it. He had been tried, and convicted of most flagrant acts in his professional character as an attorney, the punishment for which was imposed by his subsequent sentence to the state prison for two years and six months. That he was in state prison, and all his civil rights suspended, when the motion was heard and granted, is a point to which we attach no weight. The suspension of his civil rights did not give him any immunity from proceedings against him, nor suspend the rights of others (*Davis* agt. *Duffie*, 1 *N. Y. Court of Appeals Decisions by Abbott*, 486; *Id.*, 8 *Bosw.*, 619.)

A professional opinion of judge Bosworth that Niles is

VOL. XLVIII.          32

entitled to practice as an attorney and counsellor of the supreme court has been submitted to us. The judge was of the opinion that if an order had been made by the general term in February, 1851, removing Niles it would have been valid, as the papers served upon him presented facts which authorized his removal, and that the court was competent to make such an order; but he thought, upon the facts stated to him, that the inference must be that no such order was made. He had not before him all the evidence that we have. In the inquiry before us the non-production of the order is accounted for, and we have the sworn statement of the crier of the court that he was present when the motion was made, and heard the decision pronounced — a statement so fully sustained by other evidence as to leave no room for doubt.

By the act of 1862 (*Laws of N. Y.*, *p.* 971) it is a misdemeanor, punishable by fine and imprisonment, for a judge knowingly to allow any person to practice in the courts of this city who has not been regularly admitted to practice. It may be that Niles is not within the letter of the statute, having been regularly admitted; but, if it be an offense to suffer a person to practice who has not been admitted, how much graver, within the spirit of this statute, would be the offense, in a moral point of view, if we were to allow a man to practice who was stripped of his office, upon his being convicted and sent to the state prison for extorting money from persons by threatening, as attorney, to bring actions or prosecutions against them for alleged acts affecting their morals, and who, although entirely innocent, complied with his demands rather than endure the exposure and scandal incident to the public vindication of their characters?

Our conclusion is, that Niles was deprived of his office of attorney and counsellor of the supreme court by a proceeding in all respects regular and valid; that he has not been readmitted, and that he is not entitled to practice in this or in any other court in this state

In the Matter of Niles.

ROBINSON, *J.* — While concurring entirely in the views expressed by the chief judge, mine are also more radical. Niles, being an attorney of the supreme court, was convicted of obtaining goods under false pretenses, and sentenced to state prison for an infamous crime, and there worked out his sentence. His conviction has never been reversed. Under these circumstances, I am of opinion — without consideration of any action of the supreme court to remove him, which, nevertheless seems to have been effectual — that he is not qualified to practice as an attorney and counsellor in this state; and for these reasons :

Attorneys and counsellors are, by the statutes, enumerated among the class of public officers known as judicial (1 *R. S.*, 98), and subject to removal or suspension. Their tenure is for life (1 *R. S.*, 109, *sec.* 23). They may be so removed or suspended by the courts in which they shall be appointed, " for deceit, malpractice or misdemeanor," on charges preferred and opportunity given for defense (1 *R. S.*, 109, *sections* 23 *and* 24). But every office becomes vacant on the removal of the incumbent or his conviction of an infamous crime (1 *R. S.*, 122, *sec.* 34, *subs.* 3, 5), while obtaining goods under false pretenses has been held not to be a felony (*Fassett* agt. *Smith*, 23 *N. Y.*, 252). An infamous crime is one punishable with death or imprisonment in a state prison (2 *R. S.*, 702, *sec.* 31).

A sentence for imprisonment for any term less than life suspends all the civil rights of the person so sentenced, and forfeits all public offices, and all private trusts, authority or power during the term of such imprisonment (2 *R. S.*, 701, *sec.* 19). This latter limitation, during the term of such imprisonment, can have no reference to an office forfeited, but applies to private trusts, &c. To hold that a judge of this court, elected for fourteen years, sentenced to prison for two or three years might, on the expiration of his sentence, again resume the judicial functions of his office, would be prepos-terous. The sentence forfeited Niles' office, and a proper

construction of the provision would, at most, restore his capacity after the term of his sentence had expired, to be again elected or appointed. By such conviction his office as attorney and counsel became vacant (1 *R. S.*, 122), and his sentence forfeited it (2 *R. S.*, 701). A pardon by the governor only would have restored his competency to testify (2 *R. S.*, 701, *sec.* 23), or had capacity thereafter to be elected or appointed to some office or trust; but could by no retroaction restore him to any office he had either vacated or forfeited.

The order of the superior court, January, 18, 1851, was granted on mere production of the conviction and sentence.

Having thus ceased to hold such office of attorney and counsel he cannot be allowed to practice without readmission by the supreme court, which is not pretended.

DALY, *C. J.* — Judge DALY and myself also record our concurrence in the views taken in the opinion of judge ROBINSON. We give it as the united opinion of the court, on all the grounds stated, that he was properly removed; that, in other words, he ceased to be an attorney, under operation of the statute, upon his conviction and his going to state prison. But we are satisfied, even if he had not been removed, that he could not practice. The statute declares that any one guilty of an infamous crime shall forfeit his office if he is sent to state prison. In the cases in which Mr. Niles has appeared here — .

Mr. Niles (interrupting) — Will your honor take them on submission?

DALY, *C. J.* — Yes; under the circumstances, we will take them on submission.

Mr. Niles here handed up the papers relating to the cases in which he appeared, and the proceedings terminated.