In the matter of JOHN W. ARCTANDER, Attorney-at-Law.

March 28, 1879.

Misconduct of Attorney—Suspension.—A., an attorney and counsellor-at-law, admitted to practice in all the courts of this state, was employed and acting in his professional capacity, in conducting a criminal prosecution before a justice of the peace. The case prosecuted was, upon an affidavit of bias, transferred, on August 11th, to one Iverson, who had been elected justice of an adjoining town, but who had never qualified. A. persuaded Iverson to take the case and try it, and, for the purpose of qualifying him to do so, A., as notary public, on August 11th, administered to him the official oath of a justice of the peace, took the acknowledgment of him and his sureties of his official bond, and administered the oath of justification to such sureties. A. dated the jurats and acknowledgment as of August 4th. Thereupon, when the constable arrived at Iverson's, with the prisoner and papers, on August 11th, Iverson took cognizance of the case, and on that and the following day proceeded with the trial thereof, (A. conducting the prosecution,) and the prisoner having been found guilty, sentenced him to pay a fine of twenty-five dollars. On August 17th, A. filed the oath and bond (the latter having been approved by the chairman of the town board) with the clerk of the district court. No justification, excuse or explanation of the false dating is offered or attempted. *Held*, that upon the foregoing state of facts, A., in affixing the false dates, was guilty of "wilful misconduct in his profession," for which he may be suspended from practice, under Gen. St. c. 88, § 18.

Proceeding against the respondent for misconduct as an attorney-at-law.

S. L. Pierce, for informant.

Davis, O'Brien & Wilson, for respondent.

BERRY, J.* In 1874, the respondent was admitted by the district court in and for the county of Carver to practise as

*Gilfillan, C. J., because of illness, did not sit in this case.

an attorney and counsellor-at-law in all the courts of this state. In August, 1876, he was employed and acting in his professional capacity, in conducting a prosecution against one Baldwin, for selling intoxicating liquors to a minor. The prosecution was commenced before one Broberg, a justice of the peace for Swift county. Baldwin having made an affidavit of bias upon the part of Broberg, the latter transferred the case to Iver Iverson, who lived in the adjoining town of Kerkhoven, and whom he supposed to be a justice of the peace. Iverson had been elected a justice of the peace at the election held in Kerkhoven in the spring of 1876, but, up to August 11th of that year, had not signified his acceptance of the office, or taken an official oath, or furnished any official bond. The transfer was made on said 11th day of August. On that day, the respondent, having reached Iverson's house before the arrival of the constable with Baldwin and the papers in the case, and having ascertained that Iverson had not taken any official oath or furnished any official bond, and finding him reluctant to receive the case which had been transmitted to him, persuaded him to take the oath and execute the bond, and to receive the case and try the same; and, in furtherance of this purpose, drew up a form of oath and bond, both of which were subscribed by Iverson. The respondent, who was a notary public, administered the oath to Iverson, and took the acknowledgment of Iverson and his sureties of the execution of the bond, and also administered an oath of justification to the sureties. These things were all done on the 11th day of August, but the respondent dated the jurats and the acknowledgment as of August 4th. When the constable arrived with the prisoner and the papers, Iverson took cognizance of the case, and on that and on the following day proceeded with the trial thereof, the respondent conducting the prosecution; and Baldwin having been found guilty, he was sentenced to pay a fine of $25, whereupon he appealed to the district court, where the proceedings were dismissed. On August 17th, the oath and bond were filed

by the respondent with the clerk of the district court, the bond having been first approved by the chairman of the board of supervisors of Kerkhoven.

We shall not stop to determine whether, after having neglected to qualify until the 11th day of August, it was competent for Iverson to enter upon the duties of a justice of the peace, upon qualifying on that day. For the purposes of this case, and in favor of the respondent, it may be admitted that this was competent. Even if it were not, the respondent might honestly have believed it to be so, and therefore have been guilty of no intentional wrong in advising Iverson that it was competent. But on what ground can the respondent's conduct, in ante-dating the jurats and the acknowledgment of the bond, be justified or excused? The respondent, whose testimony was taken in the present proceeding, though explicitly interrogated on this point, neither offers nor attempts to offer any justification, excuse or explanation whatever. He does not claim that he believed that he was doing right. We cannot suppose that a man possessing so much intelligence, ability and learning as he manifests, could have imagined that he was justified by any legitimate or proper consideration in thus falsely dating the jurats and acknowledgment. He must be taken to have known that this was wrong, for no good purpose could be subserved by it. It is quite apparent that the respondent's object in affixing the false dates was to make it appear that the justice had qualified before he in fact had; that he had qualified before the case was transferred to him, so that the transfer was properly made to a justice legally competent to take the case. A justice elect who has not taken his oath of office has no authority to act as justice. He is liable to a penalty if he does so act. Gen. St. c. 10, § 43. He is not a justice to whom a case can properly be transferred.

The false appearance in this case was produced by what was, in its essential nature, a falsification of a record. No argument can be required to show that the act done was

wrong, and that it was done for a wrong purpose. It is of no avail to say that the respondent did it, not in his professional capacity, but as notary public. His admission, to practise was an admission to practise in all the courts of this state. This includes justice's courts, our statutes repeatedly recognizing attorneys-at-law in courts of that grade. See Gen. St. c. 65, §§ 3, 18, 104, and c. 88, §§ 1, 4; 30. What the respondent did as notary public, he, as an attorney-at-law conducting the prosecution in which he was engaged, procured himself to do. As respects the point that this procurement was in his professional capacity, the case in principle is in no respect different from what it would have been if he had procured some other notary public to do what he procured himself to do.

We are of opinion that the act of the respondent in affixing the false dates to the jurats and acknowledgment were acts of "wilful misconduct in his profession." For such misconduct, Gen. St. c. 88, § 18, authorizes an attorney to be removed or suspended. The respondent is suspended from practising in any of the courts of this state for the period of six months from the filing of this decision; and it is further ordered that he pay the costs and disbursements of this proceeding.