---

## Case No. 2,973.

### Ex parte COLE.

[1 McCrary, 405.] [1]

Circuit Court, D. Iowa.    Oct., 1879.

·OFFICERS OF COURT — POWER OF COURT OVER — ATTORNEYS AT LAW— SUSPENSION—DISBARMENT —UNFITNESS— HOW SHOWN — INCITING CLIENT TO ATTACK THE COURT—PARTICULARITY NOT REQUIRED—THE INTENT AND ATTEMPT SUFFICIENT —PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT—COMMUNICATIONS BETWEEN CLIENT AND ATTORNEY — IMPROPER PROPOSAL TO INFLUENCE JUDGE—ATTEMPT TO SECURE PLEDGES IN FAVOR OF CLIENT.

1. All courts possess an inherent power of control over all their officials, including attorneys,

and these officers are liable to be attached for contempt and punished, by fine or imprisonment, for misconduct, and all except the marshal are liable to be removed from office by the court, for sufficient reason and on proper showing.

2. An attorney may be suspended or disbarred for any matter or thing, whether sufficient to constitute a criminal offense, or create a civil liability, or not, if it shows that he is unfit to be permitted to practice in the courts as one of their officers.

3. This unfitness may be shown by proof of crime, or of bad moral character, or of specific acts done by an attorney in the course of his practice, which show him to be unfit to be trusted.

4. An information charging an attorney with inciting and encouraging his clients, who were parties to a pending litigation, to influence improperly the judicial action of the court in such litigation, by newspaper publications and printed circulars, disparaging the judicial conduct of the court, with intent to intimidate the judges in their action, held good on demurrer.

5. In such an information the precise mode by which the attorney conveyed suggestions to his client, whether by letter, direct oral conversation, or by a message sent through a third person, need not be stated.

6. It is not necessary in such an information to aver that the publications suggested by the attorney were in fact made by the client. The offense is complete when the suggestion is made in earnest to a party likely to act on it.

7. Such an information is not to be held bad on demurrer upon the ground that the suggestion being one made to a client concerning a matter in suit, is a privileged communication.

8. Short of an attempt to pervert justice by bringing to bear on the judge who is to decide, influences of corruption, intimidation, or the improper weight of personal influence, in a secret and unjustifiable manner, a very large latitude is permissible to the lawyer in discussing the means of successfully asserting the rights of the client. And this privilege extends to the discussion of the fitness of the judge before whom the case may come, to try it, and the peculiar influences which may work on his mind to favor one side or the other of the controversy.

9. A proposition by a lawyer in a letter to his client, that he will visit with his family the family of the judge, and while an honored guest will avail himself of the freedom of conversation, to seek to commit the judge to the expression of opinions favorable to his client, should exclude him from practice in the courts and from the confidence of the judge.

10. A proposition by a lawyer in a letter to his client, that he will control newspapers and induce them to attack the judge, is evidence of a purpose on the part of such attorney to improperly influence the judicial action of the judge.

11. An allegation in an information against an attorney, that, when the appointment of two different persons at different times as receiver of a railroad was under consideration, he endeavored to secure from them, as a condition to his consent to their appointment, a secret promise that each of them would, if made receiver, appoint one Pickering general manager of the road, and one Atherton to some other place in its business, held insufficient to warrant disbarment, in the absence of an allegation that the persons named were unfit, or that the pledge was not sought in the interest of his client.

A committee of the Iowa Bar Association presented to the court an information against

[1] [Reported by Hon. George W. McCrary, Circuit Judge, and here reprinted by permission.]

C. C. Cole, making certain charges of unprofessional conduct against him, and praying his disbarment. To this information a demurrer was interposed. The hearing on the demurrer was before Mr. Justice MILLER, who states in his opinion the substance of the allegations of the information.

[For the determination of a motion to attach R. L. Ashhurst and I. M. Cate for refusal to answer certain questions, see Case No. 2,975.]

James T. Lane, R. H. Gillmore, and others, for prosecution.

Mr. Cummings and Mr. Lehman, for defense.

MILLER, Circuit Justice. The proceeding against the respondent in this case is neither an indictment nor information for an offense against the criminal code of the state or of the United States. The matters with which he is charged are not made an offense by any act of congress, and this court possesses no power to try a man for any crime or misdemeanor at common law. It is not, therefore, a prosecution for any crime or misdemeanor known to the law. But all courts possess an inherent power of control over their own officers. Some of these officers are of the court's appointment, others receive their appointments from different sources. In this court the clerk is appointed by the court, or one of its members; so are certain examiners, masters, commissioners, etc. The marshal is appointed by the president and senate of the United States. Attorneys and counselors of the court are as much officers of the court as those above mentioned. Their office is conferred by the court by an order admitting them to practice in the court. All of these officers are liable to be attached for contempt and punished by fine and imprisonment for disobeying an order of the court properly made, or for any other act or misconduct connected with their office disrespectful to the court or prejudicial to the administration of justice. They are all, except the marshal, liable to be removed from office by the court for sufficient reason and on proper showing.

This reason and this showing is not necessarily limited to criminal offenses or to an act which would create a civil liability. In the case of an attorney of the court, he may be removed from his office of attorney absolutely or for a limited period of time, or in the common phrase, may be suspended or disbarred for any matter or thing proved against him which shows that he is unfit to be permitted to practice in the courts as one of their officers. This unfitness may be shown by his guilt of a crime, as theft, murder, burglary. It may also be shown by proof of such bad moral character as is inconsistent with such an honorable office. It may be shown by specific acts done in connection with his business in the court or out of it,

if it be in the practice of the duties of an attorney, which may show him unfit to be trusted as such, but which are short of any criminal offense. The respondent in this case is proceeded against for such misconduct, and the object is to disbar him.

He is not proceeded against for a crime or misdemeanor under any act of congress; and he is not proceeded against for mere contempt of court. If it was the latter, it would fail, for the act of congress (Rev. St. § 725) forbids punishment by court for any contempt not committed in its presence. The charges on which it is proposed to disbar the respondent are divided into four separate paragraphs, to each of which a demurrer, which may be treated as the exception of the civil law, is filed; and I am called on to determine whether all of these paragraphs, or how many of them, are sufficient in law to require him to answer the rule served on him to do so.

The first paragraph reads as follows: "And in pursuance of the said appointment and by virtue thereof, the said committee of the Iowa State Bar Association do hereby charge that the said C. C. Cole, having been admitted to practice in the said United States circuit court for the district of Iowa, and being an attorney of the said court, and an officer thereof, did during the year A. D. 1877 willfully violate his duties as an attorney of said circuit court in a suit depending in said court, wherein the Farmers' Loan and Trust Company, trustee, was the plaintiff, and the Central Railroad Company of Iowa and others were defendants, for the foreclosure of a mortgage on the said Central Railroad of Iowa, for that heretofore, to wit, on the twenty-sixth day of April, A. D. 1877, and at sundry times both before and after said date, he did willfully and in violation of his duties as an attorney of said court, incite and encourage R. L. Ashhurst and Isaac M. Cate, persons interested in said suit, to influence improperly the judicial action of the said court in said suit, and particularly the judicial action in said suit of the Hon. John F. Dillon, one of the judges of said court, by the publication in the newspapers published in the state of Iowa and other states, and in printed circulars, of articles designed and intended to disparage the judicial conduct in said suit of the judges of the said court, and to intimidate them in their judicial action in said suit; and particularly to influence and control improperly and wrongfully the judicial action in said suit of the Hon. John F. Dillon, one of the judges of the court, by the publication in the newspapers aforesaid and in printed circulars, of articles accusing the said Dillon of improper motives in his judicial action in said suit, and of partiality in his judgments therein, and of warping the law for friendly and other personal considerations, he, the said C. C. Cole, then and there well knowing the said imputations against the said Dillon to be untrue."

I am of opinion that if respondent did what is here charged against him, he should no longer be trusted as an officer of this court to aid in the administration of justice.

Divested of legal verbiage, and put in plain English, the charge is that he suggested, advised and incited his clients, parties to an important suit in this court, being at a distance from this state, to influence the action of the court by intimidation applied to its members, by publications in the newspapers and printed circulars; that the purpose was to influence them improperly in their judicial action in that suit—and especially that they were advised and incited to thus influence the action of Judge Dillon, one of the judges of the court, by publications in the newspapers of an abusive character, impeaching his motives and charging him with partiality and warping the law for personal considerations. I will not stop here to argue the question whether this is a legitimate mode of furnishing reasons to a judge for his decision, nor do I think it necessary to consider whether such a mode of winning a judgment is one which a court can tolerate in its own officers.

I am not now considering the right of the newspaper press to discuss for itself the conduct of the judges, in court or out of it, nor the right of any individual to criticise the acts and judgments of the court. This is a case of an attorney of the court, employed to conduct a suit pending in that court, who advises his client in advance of the hearing of the case or motion in hand, urging his client to endeavor to procure a decision in his favor, by exciting the fears of the judge by the terrorism of newspaper attacks and abusive circulars, under the expectation that rather than endure their repetition the judge will secure repose by a favorable decision. It is not criticism after the act that is intended. It is threat for the future.

It is my opinion that no lawyer who will advise this as a means of securing a judgment or order or decree of a court should be permitted to practice in that court. Objections are taken to this paragraph aside from the nature of the matters charged.

1. It is said that it is not sufficiently specific as to the manner or means, by what word, act or letter, respondent made the suggestions to his clients which are complained of. The objection thus stated, whether made to an indictment or information or a plea in a civil action, is to be governed by the same rule, namely: It is sufficient to inform the defendant of the matter with which he is charged, and enable him to make answer as to his guilt or innocence of the charge. The thing here charged is the effort to induce his clients, who are named—Ashhurst and Cate—to publish articles in the newspapers and circulars calculated to intimidate and otherwise improperly influence the judges in their judicial action. That is sufficiently specific. If he did

this, he knows it. If he did not, he knows it and can deny it. I do not see that the precise mode by which he conveyed these suggestions to Ashhurst and Cate, is either a part of the act of inciting them to do it or necessary to the description of the offense or to enable the defendant to answer the charge. In point of fact the prosecution may not know whether it was done by letter or by direct oral conversation or by message sent through a third person. They may be dependent on the powers of the court to produce this evidence for the first time to themselves as well as to the court. But respondent certainly knows whether he ever represented, suggested or incited them to do this thing or not. If he did, he must also know how it was done. If he did not, he can safely answer by a denial. It is no part of any system of pleadings in any class of cases that all the evidence to support a charge of misconduct must be set out in the indictment, information or complaint.

2. It is said that there is no averment that Ashhurst or Cate ever made any such publication, and that the unexecuted suggestions of respondent can form no ground of removal. It is proper to repeat here that the respondent is not proceeded against for a criminal offense. It may also be conceded that he cannot be disbarred for the thoughts of his mind uncommunicated to others. The influence of respondent's conduct in endeavoring to stimulate his clients to use wicked and improper means of influencing the judges in their favor on the question of his fitness to occupy the place of an officer of the court to aid in administering justice, does not depend on his success in that endeavor, but upon his willingness to make that suggestion and the effort to have it carried into operation. If that is his view of the mode in which judgments are to be won or orders procured, he is not fit to be a member of the honorable profession of lawyers. The act which proves this is the suggestion, and it is complete when the suggestion is made in earnest to a party likely to act on it. This act is sufficient to show the principles which govern his action in similar cases.

3. A third objection is that the suggestion, being one made to a client concerning the matter in suit, is a privileged communication. This divides itself into two branches. The first is that it is so privileged, that in whatever mode the prosecutors may be able to procure the evidence necessary to establish the charge, the respondent cannot be held liable civilly or criminally for so advising his client. The reported cases mainly relied on are suits for libel, and whether the respondent, if sued by Judge Dillon for a libel in anything set out in this information, could be held civilly liable, admits of grave doubt. As to much of it he certainly could not. But this is not a suit for libel. The proceeding is not founded on the idea of a

personal injury to Judge Dillon. Its basis is an attempt on the part of respondent to influence the administration of justice in a suit pending in court by the use of threats and intimidations. By raising a public scandal, which shall operate on the fears of the judge. It is an effort to organize a conspiracy to defeat the ends of justice. When called upon by the court to answer for such practices in pain of dismissal from the bar, it is no defense to say, "I only intended to conspire with my clients. I did not urge any one but them to do this thing. I had a legal right to incite them in their own interest to frighten the judge until he did what they desired." In the other aspect of the case, namely, whether the persons to whom the communications were made can be compelled to disclose them on the trial, it will be time enough to decide that question when it is raised on the hearing, if the prosecution shall be compelled to resort to that mode of securing the evidence. I am of opinion that the first paragraph of this information sets forth conduct of the defendant, which, if true, justify this proceeding, and that they are sufficiently set forth to place respondent on his defense.

The second paragraph is made up of extracts from letters written by respondent to Cate and Ashhurst pending certain motions and efforts to get the court to proceed in executing a decree it had already rendered for the sale of the railroad, which was the result of the litigation. Some of these extracts, though censuriously reflecting on the court, are, in my opinion, so far protected by the relation of client and attorney existing between respondent and the parties to whom they were written, as that, whether true or false, they cannot become the foundation for expulsion from the bar. For I am very clearly of opinion that short of an attempt to pervert justice by bringing to bear on the judge who is to decide, influences of corruption, intimidation or the improper weight of personal influence in a secret and unjustifiable manner, a very large latitude is permissible to the lawyer in discussing the means of successfully asserting the rights of his client, and that this extends to the discussion of the fitness of the judge before whom the case may come, to try it, and the peculiar influences which may work on his mind to favor one side or the other of the controversy.

But there are two extracts from these letters which very far transcend this right. They come directly within the principle I have laid down as applicable to the charges of the first paragraph. In one of these extracts respondent acknowledges the receipt of articles of incorporation of the purchasers of the road under the sale, which, it seems, required the approval of the court, and in reply, he says: "I have yours of the twenty-third also with the articles of incorporation inclosed. I am not a sufficient railroad man to be enabled to criticise with any judgment or sagacity. So far as I am able to judge,

they are without objection, and I have no doubt will prove acceptable to the court. I was going to suggest to you, whether or not, since the approval by the court, although nominally a judicial act, in this case is essentially a matter of executive conduct, whether it would not be well for myself and wife, in our vacation, to make a short visit to Davenport, to Judge Dillon and family; and while there and before the sale, to present to him the articles of incorporation and discuss them, and get his actual approval of them before the sale, and thus practice on our friends the game they have been practicing on us hitherto. I have no doubt I could get a very frank and thorough expression of his opinion in that way. What do you suggest in respect to that? It is possible that I can go to Davenport week after next." As it may become my duty hereafter to consider the judgment which ought to be pronounced, if respondent wrote this letter without sufficient excuse, I will not discuss it further than to say that in my opinion the lawyer who will coolly offer to his client to take his wife on a visit to the family of the judge—a visit which should be sacred to friendship alone,—and there, while an honored guest, to avail himself of the freedom of conversation, which it would seem like rudeness in the host to forbid, and in the absence of the other party to the suit, to seek to commit the judge to the expression of opinions favorable to his client which are to govern him in the court, should be excluded from practice in the courts or from the confidence of the judge. While this court has no control over the social relations of the judge and the lawyers, it has power to exclude such persons from the bar. The flagrant turpitude of such a proposal is not mitigated by the statement that it is a game—fit word to express it—which the other side have been practicing on respondent's clients. If the entire bar shall ever adopt this rule of practice, and the belief of the respondent that it can be successfully done is true, then will the courts of law instead of deserving the name of courts of justice, become the facile instruments of all forms of fraud and injustice.

Another extract, which reads as follows, is from a letter written to Mr. Ashhurst: "Please confer with Mr. Cate and Mr. Latrobe, and see whether it is not best to renew our motion at the May term and for you to come here and argue it. I think it is, and it is not improbable, that I could control enough of the newspapers of the state, in ventilating the course of the trustee, its attorney, and the court, to awake Judge Dillon to the idea that perhaps he had better let the law take its course than to further warp it for personal or friendly considerations. If you shall advise me of the adoption of the course suggested, I will see that the thorns in the flesh are properly entered." I think this letter, if ever written, is evidence of the matters alleged in the first paragraph. It is the worst of the whole series of charges

against respondent. As I have already shown that the first paragraph, if sustained by proof, is sufficient, it follows that this, which sets out with more particulars, the facts themselves, is also sufficient.

The third paragraph charges that respondent falsely and libelously stated in a letter, written to Ashhurst, his client, that Judge Dillon "was partial in his judicial action in said suit and warped the law for personal and friendly considerations in said suit." As I have already said, it is my opinion that it is both the right and the duty of the counsel to take into his consideration the question of the existence of such a state of mind in the judge and to confer freely with his client on the subject. And this may and often must be done, if done at all, by letter. There is no allegation in any part of this information that respondent ever expected or desired that these letters would be made public, or would reach the ear of Judge Dillon so as to wound his feelings. There is every reason, in the nature of the case, to believe that this was the last thing the respondent would have wished. There was, therefore, no intentional offense against the judge or against decorum. It is said that the statement was false. I have no doubt it was erroneous; it can hardly be supposed that counsel as deeply interested in his case as these letters show respondent to have been, will pass a very impartial judgment on the partiality of the judge who decides against him. Still he was entitled to form a judgment and communicate it to his client, and its truth or falsehood cannot be inquired into here. That is one of the class of communications between attorney and client which the patrons of the law should and must protect, for any other rule would work a restriction in the freedom of intercourse between them more injurious to the sound administration of justice than the effects of any mistaken opinion or even false misrepresentation of the attorney. This paragraph is not, in my opinion, sufficient if all it states is true, to authorize action by the court against the respondent.

Paragraphs four and five may be considered together. They allege that when the appointment of two different gentlemen at different times as receiver of the road was under consideration of the court, the respondent endeavored to procure from them, as a condition of his consent to their appointment, a secret promise that each of them would, if made receiver, appoint one Pickering general manager of the road. and Atherton to some other place in its business. It is not alleged that his client's interests would not have been promoted by the appointment of Pickering and Atherton. It is a fair inference from all that is said that they very much desired it, and that it was solely on that account that respondent sought the pledge. Nor is it alleged that Pickering or Atherton were unfit persons for the places

for which they were suggested. The gravamen of the charge is, that the pledge sought was a secret one and that the opposite party in the suit would not have consented to the appointment of any one as receiver who had made such a pledge, and the court, if it had known of such a pledge, would not have made him manager. It was an attempt, say counsel, to deceive the court and the opposite party. I confess the action of the respondent, as thus stated, does not show the nicest sense of professional honor. But we are not to expel a member of the bar of long practice and high standing in the profession because in some transaction he has in the interest of his client failed to come up to the highest standard of professional ethics. This standard is not fixed. It varies with the locality, the times and the delicacy of mind of each member of the profession. The object to be attained here was one beneficial to respondent's clients. If pursued openly, it was a duty of the respondent to endeavor to effect it. I can see no obligation he was under to the opposite party, to reveal to them that his consent to the appointment of Morrill or Smith, as receiver, was conditional on action with regard to Pickering and Atherton, or that he had secured from either of them a promise to appoint them.

The only point of slightest doubt is the suggestion of deceiving the court. But he may well have supposed that the court had no right to make the exclusion of Pickering and Atherton from occupation in the business of the road, a condition of any man's appointment. And if he knew they would do so, it may well be doubted whether he was bound to aid the court by telling of the arrangement he had made, or desired to make, with the receiver. I repeat, that however a nice sense of honorable dealings with the court might have prevented some men from seeking this secret pledge, or induced them, if they had obtained it, to make it known to the court, I am very clearly of opinion that the matter as stated in these paragraphs affords no sufficient ground for suspension or expulsion from practice in the court. It is proper to add that the allegations that respondent acted corruptly in this matter, does not change the aspect of the matter unless some corrupt act is alleged. Indeed it is not easy to see where the corruption comes in. If there was any attempt to bribe Morrill or Smith by a pecuniary consideration, surely a matter which thus varied the whole aspect of the case should have been alleged. The three last paragraphs are insufficient.

NOTE [from original report]. Upon the announcement of the foregoing opinion, the respondent answered. Subsequently, before the final hearing, the respondent made a satisfactory acknowledgment and apology; whereupon the proceeding was, upon motion of the committee of the bar association, dismissed.