## In re BROWN.

(November 1, 1884.)

ATTORNEY — SUSPENSION OF LICENSE — VILE EPITHETS APPLIED TO COURT.

Comp. Laws 1876, c. 6, §§ 10, 11, provide that the supreme court "may revoke or suspend the license of any attorney or counselor at law to practice therein * * * for the willful violation of any of the duties of an attorney or counselor." Chapter 26, § 1, adopts the "common law of England, as modified by judicial decisions," and provides that it "shall be considered as of full force until repealed by legislative authority." *Held* that, under the statutory and common law, the license of an attorney to practice in the supreme court would be suspended, where, in conversation, he applied to the court, by reason of its decision in a certain cause, vile, opprobrious, and indecent epithets, and accused one of the judges of being bribed.[1]

Prosecution of Melville C. Brown, an attorney and counselor at law, for applying to the supreme court vile, opprobrious, and indecent epithets, and for accusing one of the justices of being bribed. Judgment that defendant's license to practice in the supreme court be suspended.

*J. C. Baird,* for prosecution of the accusation. *Downey & Blake,* for respondent.

LACEY, C. J. This is an accusation against Melville C. Brown, an attorney and counselor at law of this court, prosecuted by direction of the court under the act of December 9, 1869. Comp. Laws, 16. The accusation avers *inter alia* that the respondent, in the presence of divers witnesses, in the city of Cheyenne, in this territory, uttered of and concerning this court, and its decision of a certain cause, the following language: "It is a son of a bitch of a court,—one bribed and the other I don't know what." It is further alleged that said words were so spoken with intent to scandalize, traduce, and bring into contempt and disgrace the court. There

---

[1] See note at end of case.

is also a further allegation charging the utterance of similar words at Laramie City; but as to these words we do not find the accusation sustained. The respondent answered under oath. In his answer he admits the use of the language at Cheyenne, except that he claims he used the expression "son of a gun" instead of "son of a bitch." Mr. Corlett and Mr. Riner both swear positively that the latter expression was the one used, and they are contradicted by the respondent alone. The court finds, therefore, that the words laid in the accusation were the words used.

Were the words used in relation to this court and a cause by it decided with intent to charge the court with bribery in the decision of that cause? If the above question be decided in the affirmative, do all the facts show, on the part of respondent, such a violation of his duties as an officer of this court as would demand a suspension or severance of the official relation? The evidence shows that, on the day the words were uttered, this court had decided a case in which Edward Ivinson was appellant, and Charles Hutton and Judge CAREY and brother were appellees. The decision was by a majority of the court, the members of that majority being Judges BLAIR and PARKS. The then Chief Justice SENER dissented. The respondent was solicitor for the appellant in that cause, and the decision was adverse to his client. Immediately after the decision the respondent and several others walked from the court-room towards the hotel, stopping on the way at the Sun office. While in the Sun office some one remarked to respondent, "Brown, you got beaten," or words to that effect; to which respondent replied: "Yes; that's a son of a bitch of a court,—one bribed and the other I don't know what."

The respondent was himself sworn as a witness on his own behalf at the trial, and in his evidence made the following answers:

"Question. To recur to the conversation in the Sun office, you say the name of no court was mentioned? Answer. No, sir; it was not. Q. What court did you refer to as the son of a gun of a court? A. I don't know that I referred to any; it was one of those remarks we lawyers sometimes make. It really has but little or no meaning. Q. Some one asked you if you were beaten? A. Yes, sir. Q. In your reply, 'Yes,' where did you mean you were

In re Brown.

beaten? A. Well, if I meant anything, or if my conversation referred to any matter, it probably referred to the case decided there in court. Q. You would say that your conversation referred to something? A. Well, it referred to just this, if your honor please: it was a remark made in anger, and what it meant, or what one would mean by it, it would be pretty hard to say. Q. In your answer you certainly referred to the Ivinson case? A. I certainly had the Ivinson case in mind."

Mr. Corlett, in his evidence, after stating what had occurred in the Sun office, and that he and the respondent were afterwards, on the same day, in his (Corlett's) office, states the following as having occurred at the latter place:

"I broached the subject to him about his remark. He said to me finally that he didn't mean to say that I had done anything, or had anything to do in respect to this case, that was improper; or that Judge Carey had, either. Question. What cause had that reference to? Answer. What we call the Ivinson and Hutton case. Q. * * * Now, you might state whether, in that conversation, the respondent did not state that he meant not to be understood that the court was bribed. A. I don't remember of his saying that. Q. You might state whether the respondent did not wish to be understood as charging any judge with bribery. A. No, sir. The statement was that he did not mean to say that he had any evidence that Judge Blair [one of the judges of this court] had been bribed, but that his position in the supreme court was different from what it was in the district court. That may have been it, or that he did not have any evidence."

As to what drew out respondent's remark above stated, Mr. Corlett testified:

"I don't know, but for some reason or other I presumed he had reference to Judge Blair; and I asked him what reason he had for thinking Judge Blair had been bribed, or if he had any evidence of it."

Of the above testimony, and the conversation mentioned in it, the respondent, in his testimony, says:

"I think if it occurred at all, and probably it did as he states it, it occurred in the afternoon of that day, or substantially as he states it. If I was to repeat the conversation I would not vary it very much."

We think the evidence shows conclusively that the language spoken by the respondent at the Sun office was spoken of this court, and concerning its decision in the Ivinson-Hutton case, and, being so used, the only meaning which can reasonably be given the words is one which charges the court with bribery in the decision of that cause. By his words, spoken publicly, the respondent, with vile epithets, charged the court with the commission of the highest crime which a court can possibly commit, and yet it is not claimed that there was even the slightest ground for that charge.

The claim is that the words were spoken in anger. The plain duty of respondent was then to right the wrong as far as possible, and when confronted here with the groundless charge made by him to retract it with as much alacrity as it was uttered. He owed it to himself as well as to the court to be entirely frank, candid, and truthful in the matter. But there is no retraction in the respondent's answer, nor is there anything showing the slightest regret upon his part on account of his offense. Indeed, the answer closes with this self-sufficient language:

"That if at any time he has criticised the action of courts unkindly it was the result of disappointment in the failure of justice, and the inability of courts to administer the law with that uniformity and precision that he believed requisite in so high and noble a profession, and not from any disposition or intention to hinder or prevent the due administration of justice."

Respondent testifies that he retracted the charge of bribery in a private conversation with Mr. Corlett, which, respondent says, took place before noon of the day of the utterance, and within a few minutes after the utterance. Mr. Corlett's recollection is not in accord with that of respondent upon this point, and in this the former is strongly corroborated by the conversation which took place several hours afterwards in his office,—a conversation in which respondent reiterated in effect the charge of bribery, though admitting he had no evidence of it. It is at least singular that this conversation should have taken place as it did if the retraction had been made as claimed. It will be seen that the testimony of respondent, to state it mildly, was quite evasive. We have also had the task of trying to reconcile that testimony with his sworn answer. For example, that answer contains the following:

"But respondent denies that he used said language, or spoke said words of or concerning said cause of Ivinson against Hutton, or any other case that had been decided by said supreme court."

This denial we failed to reconcile with portions of respondent's testimony.

Our statute provides that this court "may revoke or suspend the license of any attorney or counselor at law to practice therein: * * * *Fifth*, for the willful violation of any of the duties of attorney or counselor." The statute does not define the duties of an attorney or counselor. We have also a general statute adopting the "common law of England, as modified by judicial decisions," and expressly providing that that common law "shall be considered as of full force until repealed by legislative authority." Comp. Laws, p. 193, § 1.

The duties of an attorney in this territory are, therefore, the same as under the common law, his first duty being to the court of which he is an officer. "The obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not merely to be obedient to the constitution and laws, but to maintain at all times the respect due courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct towards the judges personally for their judicial acts." Bradley v. Fisher, 13 Wall. 335, at page 355.

The fountain of the power of the courts to remove attorneys, as exercised at common law, is the statute of 4 Hen. IV. c. 18, which is as follows:

"And if any such attorney be hereafter found notoriously in any default of record or otherwise, he shall forswear the court and never after be received to make any suit in any court of the king. They that be good and virtuous and of good fame shall be received and sworn at the discretion of the justices, and, if they are notoriously in default, at discretion may be removed upon evidence either of record or not of record."

It seems to us that the power to remove under our statute, and the causes sufficient for removal, are as broad and comprehensive as at common law. Further, so far as questions now arising in this case are concerned, there is nothing in our statute, either expressly or by implication repealing the common law.

The court finds that the accusation, so far as it relates to the conversation in Cheyenne, is in all things sustained, and that the subsequent conduct of the respondent in relation to the matters involved, including his answer and testimony here in this action, has in no way lessened or atoned for his offense. The court further finds that the default of the respondent, the willful violation of his duty to the court as an attorney and counselor, has been such, when viewed from the standpoint either of the common law or of our statute, as to demand a suspension of his official relation to this court. Bradley v. Fisher, 13 Wall. 335, supra; Beene v. State, 22 Ark. 149; People v. Green, 7 Colo. 237, 244, 3 Pac. Rep. 65, 374; Ex parte Wall, 107 U. S. 265, 2 Sup. Ct. Rep. 569. It is therefore considered by the court that the license of respondent as an attorney and counselor at law to practice in this court be, and the same is hereby, suspended until the further order of this court, It is further considered by the court that the respondent pay the costs of this proceeding, taxed at $83.

All the judges concurring.

NOTE.

SUSPENSION AND DISBARMENT OF ATTORNEY.

The power of the court to admit an attorney implies the power to strike off his name from the roll, (People v. Goodrich, 79 Ill. 148;) and the court may either suspend or expel, (Ex parte Burr, 2 Cranch, C. C. 379.) Such power, in a summary manner, should be exercised with great caution. Rice v. Com., 18 B. Mon. 472. Under the Illinois statute the circuit court can only suspend; the power to disbar is vested in the supreme court. Winkelman v. People, 50 Ill. 449. An attorney is an officer of the court, and may be removed for misconduct, after opportunity to be heard. Penobscot Bar v. Kimball, 64 Me. 140. Any court of record having jurisdiction may suspend an attorney for causes specified in the statute. Mattler v. Schaffner, 53 Ind. 245. Where the statute prescribes the causes, courts cannot disbar for causes not therein specified, (Ex parte Smith, 28 Ind. 47; see Redman v. State, Id. 205;) but in Michigan the court my suspend or remove attorneys for other causes than those specified in the statute, (In re Mills, 1 Mich. 392.) The application to strike the name of an attorney from the rolls should be denied where the evidence is conflicting as to whether he received the information which he disclosed, and which was alleged as misconduct. People v. Barker, 56 Ill. 299.

An order to suspend or remove for contempt

In re Brown.

should not be made unless the offense is of a gross or serious nature, (Watson v. Bank, 5 S. C. 159;) and the matter must be established before the rule is issued, (State v. Kirke, 12 Fla. 278;) and the rule must be served on the party, (Id.) The precise cause must appear in the order for suspension. State v. Watkins, 3 Mo. 337. An order of a territorial supreme court cannot be vacated by *mandamus* from the United States supreme court. Ex parte Secombe, 19 How. 9. The authority of the supreme court will not be exercised unless the conduct of the court below was irregular or flagrantly improper. Ex parte Burr, 9 Wheat. 529. . The district court has no authority to disbar an attorney admitted in the supreme court; and *mandamus* will issue to restore him. People v. Turner, 1 Cal. 190. See People v. Justices, 1 Johns. Cas. 181. In Indiana an appeal is given by statute, but such appeal will not authorize the attorney to do anything which he is forbidden to do by such judgment. Walls v. Palmer, 64 Ind. 493. The appellate court should not refuse to review the decision, although it will not reverse unless a plain case is shown. In re Wool, 36 Mich. 299.

The act of a court in disbarring an attorney is not a criminal, nor a *quasi* criminal, proceeding, nor is the order a personal punishment, but a mode of the court to get rid of an improper officer. Bradley v. Fisher, 7 D. C. 32, affirmed in 13 Wall. 335.

Although counselors, solicitors, and attorneys are declared by statute to be judicial officers, yet they do not hold an office or public trust, in the constitutional sense of that term, but are officers of the court, exercising a privilege or franchise, subject to removal or suspension by the courts. In re Baum, (Sup.) 8 N. Y. Supp. 771.

The fact that the misconduct of an attorney occurred in a proceeding before the officers of the United States land office is no objection to the jurisdiction of the state court of his residence to disbar him. In re O——, (Wis.) 42 N. W. Rep. 221.

## GROUNDS FOR DISBARMENT.

An attorney may be suspended or disbarred for any matter showing his unfitness to practice in the courts, whether it be a criminal offense or creates a civil liability or not. State v. Winton, (Or.) 5 Pac. Rep. 337. See Ex parte Wall, 2 Sup. Ct. Rep. 569, 13 Fed. Rep. 814; Ex parte Cole, 1 McCrary, 405. The circuit court has inherent power to disbar an attorney for an assault upon the judge thereof on notice to such attorney, and opportunity to be heard in his defense. Beene v. State, 22 Ark. 149; Ex parte Heyfron, 7 Miss. 127; Saxton v. Stowell, 11 Paige, 526; People v. Green, (Colo. Sup.) 3 Pac. Rep. 65, 374. Unprofessional or disrespectful conduct, though amounting to contempt, will not always justify disbarring him, (Withers v. State, 36 Ala. 252;) but an attorney who appears in court armed with deadly weapons, (Sharon v. Hill, 24 Fed. Rep. 726,) or takes as a notary and antedates a jurat and acknowledgment of a justice of the peace, and then tries the case before the justice, (Nordin v. Arctander, (Minn.) 1 N. W. Rep. 43,) or

obtains a change of venue by means of an affidavit forged by him may be disbarred, (Ex parte Walls, 64 Ind. 461.) So, for fraudulently obtaining a license to practice, (In re Lowenthal, (Cal.) 3 Pac. Rep. 657;) or for violation of his official oath by not conducting himself in his office with fidelity to his client; or for unprofessional conduct, even when such conduct does not actually injure the client, (Farlin v. Sook, (Kan.) 1 Pac. Rep. 124; Strout v. Proctor, 71 Me. 288.)

Collusion by a husband's attorney with the wife, to manufacture deceptive evidence to enable the husband to procure a divorce, is professional misconduct. In re Gale, 75 N. Y. 526. Advertising to procure divorces without compliance with the requisites of the law is a ground for striking his name off the roll, (People v. Goodrich, 79 Ill. 148;) so, where the attorney substituted the name of his client for his own in an affidavit to procure alimony, his name was stricken from the roll, (People v. Leary, 84 Ill. 190.) Taking legal papers from the files of the court must be stated with sufficient particularity to enable accused to make his defense. People v. Allison, 68 Ill. 151. Erasing the word "not," in a letter from a judge advising another judge to allow bail for one indicted for murder, is a ground, (Baker v. Com., 10 Bush, 592;) so for withholding from his client and his client's administrator money collected by him, (People v. Cole, 84 Ill. 327; Klingensmith v. Kepler, 41 Ind. 341, 50 Ind. 434; In re Treadwell, (Cal.) 7 Pac. Rep. 724; Jeffries v. Laurie, 23 Fed. Rep. 786;) or for refusal to pay over money to client, (People v. Palmer, 61 Ill. 255;) or for fraud and deceit practiced towards his client or a third party, (Slemmer v. Wright, (Iowa,) 6 N. W. Rep. 181; In re Temple, (Minn.) 23 N. W. Rep. 463.) The institution of proceedings by one attorney from improper motives, and without just grounds, to disbar another, is misconduct. In re Kelly, 62 N. Y. 198. On being convicted of a felony an attorney loses his right to practice in court without an order of the supreme court removing him. In re Niles, 5 Daly, 465. He may be disbarred for the bribery of a witness, (Walker v. State, 4 W. Va. 749;) or for a false oath taken, or any unprofessional statement made without a prior conviction for perjury, (Terry v. State, 3 G. Greene, 550;) or for any fraudulent conduct, although not so gross as to be criminal, (U. S. v. Porter, 2 Cranch, C. C. 60;) or for obtaining money by false pretenses in matters intrusted to him, (People v. Ford, 54 Ill. 520.)

The offense need not be such as to subject him to indictment, but its character must be such as shows him unfit to be intrusted with the powers of the profession. Baker v. Com., 10 Bush, 592. Discreditable acts, if not connected with his duties, will not give the court jurisdiction, (Dickens' Case, 67 Pa. St. 169;) as attempting to make an opposite attorney drunk, (Id.) Indulgence in vices not affecting his personal or professional integrity is not sufficient ground. Baker v. Com., 10 Bush, 592. So ignorance of the law is not a good cause. Bryant's Case, 24 N. H. 149. An attorney cannot be disbarred for refusing in presence of the court to make answer in writing to a rule, upon the ground of punishing

### In re Brown.

the refusal as a contempt. Ex parte Robinson, 19 Wall. 505. Contempt of process and refusal to appear before an examiner is not sufficient ground, (Com. v. Newton, 1 Grant, Cas. 453;) but a threat of personal chastisement, made to a judge out of court, is ground for striking his name off the rolls, (Bradey v. Fisher, 13 Wall. 335; People v. Green, (Colo. Sup.) 3 Pac. Rep. 65, 374.) Contempt and gross misbehavior in office generally are distinct offenses. Ex parte Bradley, 7 Wall. 364.

It being the practice of the supreme court of Pennsylvania not to hear appeals from *pro forma* decrees, it is an offense punishable by disbarment for an attorney, with the intention of misleading the court, in making up his paper book, to add to the words "bill dismissed," as contained in the record, the words "in order that the supreme court might decide the case," where the case was decided on the merits. In re Van Horn, (Pa. Sup.) 19 A. 853.

An attorney who collects money for his clients, and wrongfully converts it to his own use, and, in bad faith, claims that the amount converted was the amount he was entitled to as fees, is guilty of such misconduct as warrants his suspension, if not disbarment. In re O——, (Wis.) 42 N. W Rep. 221.

An attorney who, after having been employed by one party to a litigation, and having ceased to be thus employed, seeks employment by the adverse party, offering to impart to the latter important information, is guilty of such a breach of trust as requires his disbarment. U. S. v. Costen, 38 Fed. Rep. 24.

Under Code Civil Proc. Cal. § 287, providing that an attorney may be disbarred for the reason, among others, that he has been convicted of a crime involving moral turpitude, the supreme court has no authority to proceed against a member of the bar upon a mere verified accusation of larceny, preferred by another attorney. In re Tilden, (Cal.) 25 Pac. Rep. 687.

An attorney agreed to collect a judgment against a debtor who had previously employed him professionally, and who he believed would consult him in regard to any other law business he might have. He procured another attorney to bring suit against both the debtor and his wife on the judgment, and accepted a retainer from them to defend the action. He falsely represented to the wife, who was financially responsible, that she was liable on the judgment, and in pursuance of his advice she settled the action, and the attorney obtained his fee for the collection. *Held*, that a judgment of absolute disbarment was justified by the evidence. County Bar v. Taylor, (Conn.) 22 Atl. Rep. 441.

The circuit court may, by summary proceedings, according to the common law, strike from its roll the name of an attorney who is guilty of writing and publishing in a newspaper a false and libelous charge against the judge of such court, in respect to his official conduct, and the disclaimer by the attorney of intentional wrong or disrespect to the judge or court will not excuse him, when the contrary appears upon a fair interpretation of the language employed. State v. McClaugherty, (W. Va.) 10 S. E. Rep. 407.

An attorney in an affidavit made by himself, and filed in a surrogate's court, charged the surrogate with corrupt practices, and also charged him, while presiding in open court, with being an infamous, forsworn, and corrupt judge. When arraigned in the supreme court for this misconduct, he reiterated the charges in an affidavit, and insisted upon the truth of them. *Held*, that he should be disbarred. In re Murray, (Sup.) 11 N. Y. Supp. 336.

A petition for the disbarment of an attorney at law alleged that he falsely and maliciously charged petitioner, a county judge, with falsifying the records of his court and with acting oppressively and corruptly. On demurrer thereto a printed brief was filed, wherein an intemperate, scandalous, and disgusting attack on petitioner was made, and it was claimed that it was no breach of professional etiquette to curse him. Thereupon the demurrer was overruled, and respondent was required to show cause why he was not guilty of malconduct in office in filing his brief. Several witnesses testified to the good character of petitioner, but respondent took no testimony, and merely filed an affidavit attempting to excuse his conduct. *Held*, that respondent would be suspended from practicing as an attorney at law for six months. People v. Brown, (Colo. Sup.) 30 Pac. Rep. 338.

### Proceedings to Disbar.

Proceedings to disbar for commission of a criminal act may precede criminal prosecution therefor. In re Treadwell, (Cal.) 7 Pac. Rep. 724; Ex parte Wall, 2 Sup. Ct. Rep. 569; Ex parte Walls, 64 Ind. 461; Watson v. Bank, 5 S. C. 159. The North Carolina statute requires a prior conviction upon an indictment and verdict, and it takes away the common-law power to strike from the rolls. Kane v. Haywood, 66 N. C. 1. See Ex parte Schenck, 65 N. C. 353. Such proceedings are designed to afford a remedy to the creditor to collect the money from the attorney. In re Browne, 2 Colo. 553. An attorney's license cannot be suspended except on accusation and notice, and a day in court. State v. Start, 7 Iowa, 499. An order to show cause is the improved mode of procedure. In re Percy, 36 N. Y. 651. In a summary proceeding for malpractice the fact must be known to the court by having occurred in its presence. Walker v. Com., 8 Bush, 86. In case of malpractice out of the presence of the court, the proceeding is by complaint or information made on oath. Walker v. Com., 8 Bush, 86. For any other misconduct than contempt he can only be held on specific charges, and he is entitled to a full defense and an appeal. Dickinson v. Dustin, 21 Mich. 561; In re Mills, 1 Mich. 392. The court must order an information against him and inflict the punishment, on the plea of guilty, found on such information. Fisher's Case, 6 Leigh, 619. An order to show cause why he should not be struck from the rolls may be based on a decree against him on a charge of fraud or gross abuse of confidence, or it may be incorporated in the decree itself. In re Wool, 36 Mich. 299; In re Percy, 36 N. Y. 651. In analogy to the limitation of prosecutions for misdemeanors, there must be a limit to the

time for filing informations against attorneys. People v. Allison, 68 Ill. 151. In proceedings to disbar on the ground of fraudulently procuring admission, defendant is entitled to a change of venue if the judge is prejudiced. In re Peyton, 12 Kan. 398. A proceeding upon charges preferred by a private prosecutor is a special proceeding, wherein a change of venue for prejudice of the judge may be granted. State v. Clarke, 46 Iowa, 155. Proceeding to strike an attorney from the roll for alleged fraud is a *quasi* criminal case, and no appeal lies from the judgment, (State v. Tunstall, 51 Tex. 81;) but an appeal lies from a summary order, issued without compliance with the statute. Ex parte Trippe, 66 Ind. 531. See Thomas v. State, 58 Ala. 365. The charge should be clearly supported by the evidence. In re —————, 1 Hun, 321. The grounds of complaint must be brought to the notice of the supreme court at general term, in the first instance, which will direct an investigation and a motion if deemed proper. In re Brewster, 12 Hun, 109. For malpractice the case should be free from doubt. People v. Harvey, 41 Ill. 277. Notice of grounds of complaint and an opportunity to be heard must be given to the accused. Ex parte Robinson, 19 Wall. 505. Where motion is made to suspend and issue joined, defendant is entitled to a trial by jury. Reilly v. Cavanaugh, 32 Ind. 214. In such proceedings, where the charges are denied, the common-law rules of evidence apply. In re Eldridge, 82 N. Y. 161. For fraudulently misleading his client, there must be proof of the fraud tending to mislead. Barker's Case, 49 N. H. 195.

The formal appointment of a bar committee to prosecute disbarment proceedings, and preferment of charges by it, is not necessary to give the court jurisdiction. County Bar v. Taylor, (Conn.) 22 Atl. Rep. 441.

Circuit courts have jurisdiction and power, upon their own motion, without formal complaint or petition, in a proper case, to strike the name of an attorney from the roll, provided he had reasonable notice, and an opportunity to be heard. State v. McClaugherty, (W. Va.) 10 S. E. Rep. 407.

The petition for disbarment of an attorney alleged failure to maintain the respect due the court, defending an unjust cause, employing means of defense inconsistent with truth, and misleading the court by artifice and falsehood. The facts were set out in narrative form, without allegations connecting them with one or the other general charges of misconduct. *Held* good on demurrer. In re Lowenthal, (Cal.) 21 Pac. Rep. 7.

In a proceeding before the supreme court of California to disbar respondent as an attorney, under Code Civil Proc. § 287 et seq., the court rendered judgment of disbarment for two years, and until a judgment obtained by a third person for money collected by said attorney should be paid. It was conceded that the court might have disbarred the respondent permanently. *Held*, that the punishment inflicted was within the jurisdiction of the court, and was not void for uncertainty. In re Tyler, (Cal.) 20 Pac. Rep. 674.

Proceedings for disbarment of an attorney, on the ground of failure to maintain respect due the court, defending an unjust cause, and misleading the court by artifice, are not barred by the statute of limitations. In re Lowenthal, (Cal.) 21 Pac. Rep. 7.

Though the supreme court has original jurisdiction of proceedings to disbar an attorney for misconduct, it will not do so where the attorney's misconduct consisted in alleging in a petition unnecessary scandalous matter as to the moral character of another attorney, where there is an adequate remedy by contempt proceedings in the court in which the petition was filed. People v. Green, (Colo.) 13 Pac. Rep. 514, distinguished. People v. Berry, (Colo. Sup.) 29 Pac. Rep. 904.