*In re* SADDLER.

No. D-5.    Opinion Filed March 11, 1913.

(130 Pac. 906.)

**CONSTITUTIONAL LAW** — Governmental Powers — Encroachment on Judiciary. Section 266, Comp. Laws 1909, in so far as it prohibits a disbarment of an attorney for acts involving moral turpitude, disconnected with his professional or official duty as an attorney, until after conviction therefor, is not violative of the provisions of the Constitution vesting in the various courts of the state the judicial power of the state, and prohibiting the exercise by one of the three great departments of the government of the power properly belonging to the other departments.

(Syllabus by the Court.)

In the matter of proceedings to disbar E. I. Saddler. Recommendations of a referee that a demurrer to the petition should be sustained. Confirmed.

HAYES, C. J. After several affidavits had been filed in this court charging respondent of having been guilty of certain alleged unlawful and corrupt conduct, this court appointed a member of the Bar Commission to investigate said complaints, and make recommendations thereon to the court. The member of the Bar Commission so appointed, after making investigation, filed in this court his petition for the disbarment of respondent, in which it is alleged that respondent did willfully and corruptly in the month of July, 1909, in the city of Guthrie, county of Logan, in this state, offer to pay to one James Noble the sum of $10 if said Noble would procure in advance for respondent the questions prepared by the state of Oklahoma, to be submitted to persons applying for certificates to teach school in the state, and that such examination questions were sought by the said Saddler with the intention to, and that he did, sell the same to persons applying at the examinations held by the state for the issuance of certificates to teachers. It is alleged that he offered to procure, and did procure, the services of one John Anderson to sell copies of the questions to persons who were applicants, which would en-

able incompetent teachers to prepare for said examination and fraudulently secure certificates to teach school; that said Anderson while in the employ of said respondent sold to one L. W. Flowers, an applicant to teach school, a copy of said questions for the sum of $10; that he sold a set of said examination questions to other applicants to teach whose names are set out in the petition. Some of these sales were effected by respondent in person and others through agents employed by him; and he offered to sell such questions to various persons, in addition to those to whom he did sell. In answer to the petition respondent denies all of the charges made therein against him. The court thereupon appointed a referee to hear the evidence, and make and report to this court his findings of fact and conclusions of law. After the referee had heard some testimony in support of the charges, he announced that he was of the opinion that the demurrer of respondent to the petition upon the ground that the facts alleged by the petition did not sufficiently constitute a cause of action against respondent, and that the grounds alleged in said petition constitute none of the statutory grounds upon which a disbarment proceeding may be submitted, should be sustained; and further taking of testimony was suspended, and the referee reported to this court his conclusions of law upon the questions presented by the demurrer for decision of this court before further proceeding with the hearing of evidence.

By section 265, Comp. Laws 1909, any court of record is authorized to revoke or suspend the license of an attorney to practice therein after a copy of the charges against him shall have been delivered to him by the clerk of the court in which the proceeding is begun, and an opportunity is given him to be heard in his defense. The succeeding section prescribes the grounds upon which such suspension or revocation may be had in the following language:

"The following are sufficient causes for suspension or revocation: First, when he has been convicted of a felony under the laws of Oklahoma, or a misdemeanor involving moral turpitude, in either of which cases the record of conviction is conclusive evidence. Second, when he is guilty of a willful disobedience or violation of any order of the court requiring him to do or

forbear any act connected with or in the line of his profession. Third, for the willful violation of any of the duties of an attorney or counselor: Provided, that whenever any act is done by the attorney for an honest purpose or with the intent to discover the truth in some matter heretofore being litigated and pending in any tribunal at the time the acts were done, or to prevent litigation, then they shall not be grounds for revocation or suspension of the attorney's license. The filing of any pleading or exhibit in court shall not be cause for suspension or revocation of the attorney's license, but may be punished as a contempt and according to the laws governing proceedings in contempt cases. An attorney's license shall not be revoked or suspended for any cause or in any manner except as provided in this chapter of the statutes of this state as amended by this act."

The same section further provides that if on the trial the evidence shows the acts with which respondent is charged do not fall within one of the provisions contained in the section, or they are barred by the statute of limitations in the act provided, the attorney accused shall stand acquitted; and by section 267 it is provided that all actions for suspension or removal shall be brought within one year after the action charged was committed and not thereafter. That it was intended by the statute to prohibit the revocation of the license of an attorney for any other grounds than those specified in the statute cannot be doubted. The language of the statute is susceptible of no other construction. While the acts with which respondent is charged involve moral turpitude, in that by them, if they are true, he attempted and practiced a fraud upon the state by corruptly enabling persons who were not competent to teach school to secure certificates of authority to teach, and thereby defeated the purposes of the statutes of the state requiring that teachers shall possess the qualifications prescribed by the statute before certificates are issued to them, and in accomplishing this unlawful purpose, he stood ready and willing to corrupt other persons to procure for him surreptitiously or otherwise copies of the questions in advance that he might barter and sell them to prospective applicants for teachers' certificates; but it is not charged that, if said acts constitute a violation of any statute, he has been indicted and convicted therefor; and the charges made do not, therefore, come

within the first provision of section 266, *supra*. Nor is he charged with being guilty of a willful disobedience or violation of any order of court requiring him to do or forbear any act connected with or in the line of his profession. The acts committed by him, of which complaint is made, are wholly disconnected with any duty or relation of his profession as an attorney.

If the first clause of the statute quoted above stood alone in connection with that portion of the statute which prohibits the revoking of any license except for the causes provided in the statute, it is clear that the effect of the statute would be to authorize a court to disbar an attorney for no other cause than an act or acts involving moral turpitude of which the person charged has been convicted. It would be immaterial whether the immoral conduct pertained to the official or professional life and duties of the attorney, or to his private life. In neither event could a disbarment occur until after a conviction for the offense. But this clause of the statute must, like all statutes, be construed in its relation to all other parts of the statute, so that each and every part will harmonize. It is clear that the second clause authorizes a disbarment for disobedience or violation by an attorney of any order of the court connected with the office of attorney; and the third clause authorizes a disbarment for a violation of any of the duties of attorney or counselor, which duties are, to some extent, specifically defined by section 257, Comp. Laws 1909. A violation of the duties of an attorney or the disobedience of an order of court relative to some official duty may or may not constitute a criminal offense for which a prosecution lies. As to the grounds of the disbarment provided by the second and third clauses, there is no provision that there shall be a conviction before an order of disbarment may be made, and they must be construed as a limitation upon the first clause. Reading the entire statute together, we think the legislative intent was to provide, not that no attorney shall be disbarred in any event for the commission of an offense against the criminal statutes of the state, unless he has been previously convicted, but to provide that no such disbarment shall occur for such an offense until after conviction, where the offense was disconnected with any act of will-

ful disobedience or violation of any order of court requiring him to do or forbear any act connected with the line of his profession, or unrelated to any of his duties as an attorney or counselor and constituting no misconduct in office; and the statute thus construed further prohibits the disbarment of an attorney for any act involving moral turpitude, disconnected with any professional or official duty, if such act is not one for which a prosecution and conviction lies. The offense or offenses with which respondent is charged in this case fall within the class last mentioned above. It is not charged that the acts complained of constitute the violation of any statute for which a prosecution may be had; and, if any statute exists making such acts a criminal offense, it has not been called to our attention, and we have been unable to find it. The acts charged, however, do in our opinion evidence deficiency in character and moral turpitude. "Moral turpitude" has been defined as including any act evidencing baseness, vileness, or depravity in private and social duties which a man owes to his fellow man, or to society in general, contrary to justice, honesty, or good morals. *State v. Mason*, 29 Ore. 18, 43 Pac. 651, 54 Am. St. Rep. 772; *Baxter v. Mohr*, 37 Misc. Rep. 833, 76 N. Y. Supp. 982; *In re Disbarment of Coffey*, 123 Cal. 522, 56 Pac. 448; *In re Kirby*, 10 S. D. 322, 414, 73 N. W. 92, 907, 39 L. R. A. 856, 859.

The purposes and effect of the act with which respondent is charged would be to defeat the laws of the state, requiring those to whom certificates to teach are issued to possess qualifications prescribed by the statute, and considered necessary for the protection and welfare of the children of the state. His conduct was such as to enable those who availed themselves of the benefit thereof to practice a fraud upon the state; but it in no way constitutes a violation of any order of court connected with or in line of his profession, nor does it grow out of any professional or official duty or relation existing by reason of his position as an attorney. The offense, therefore, charged against respondent does not constitute a cause for disbarment under the terms of the statute, and the demurrer to the petition should be sustained, unless

the statute is void as being in conflict with the Constitution of the state.

This statute was in force in the territory of Oklahoma at the time of the admission of the state, and was by the Enabling Act and the Schedule to the Constitution extended in force in the state, unless in conflict with the Constitution of the state. There is no specific provision in the Constitution conferring upon any court power either to admit or to disbar attorneys. If the Constitution vests in any court or courts the power to determine for what causes an attorney may be disbarred, as well as to determine when an offense has been committed by an attorney that renders him subject to disbarment, it is done by implication, and not by specific provision. In considering the question of the validity of this statute, it must be done with full observance of the rule that must always govern courts in determining the constitutionality of any statute, which requires that the statute shall be sustained, unless its conflict with the Constitution is clear and free from doubt.

Section 1, art. 7, of the Constitution, vests all judicial power of the state in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law. We do not think it can be doubted that the power to determine whether any person has committed acts or has been guilty of conduct which at common law or by provision of statute has been declared to constitute a cause for disbarment is a judicial power that can be exercised only by the courts, and not by the Legislature, under a Constitution where there is a division of the powers of government vested in different departments, and a limitation imposed by the Constitution that the power vested in one department shall not be exercised by either of the others; but that it is in every instance a judicial power to determine what acts or conduct shall constitute a cause for disbarment is not so free from doubt. There is much vagueness of thought and expression in the cases from the courts upon this question, due, no doubt, in the main, to the fact that the question has been pre-

sented directly to the courts in but few cases. There are many decisions, both state and federal, which contain the general statement that the power of disbarring attorneys is an inherent power in the courts, or that it is a power necessarily possessed by all courts having authority to admit attorneys to practice. *In re Peyton,* 12 Kan. 399; *In re Smith,* 73 Kan. 743, 85 Pac. 584; *State ex rel. v. Winton,* 11 Ore. 456, 5 Pac. 337, 50 Am. Rep. 486; *Sanborn v. Kimball,* 64 Me. 140; *State v. Kirke,* 12 Fla. 278, 95 Am. Dec. 314; *Davis v. State,* 92 Tenn. 634, 23 S. W. 59; *Scott v. State,* 86 Tex. 321, 24 S. W. 789; *Ex parte Robinson,* 19 Wall. 505, 22 L. Ed. 205; *Ex parte Wall,* 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552; *Ex parte Garland,* 4 Wall. 333, 18 L. Ed. 366.

By a careful consideration of these cases, however, and others of similar import, it is disclosed that they are authority only for the proposition that, in the absence of specific constitutional or statutory provision conferring authority upon the courts to disbar, the courts have power by virtue of the common law to disbar attorneys for certain causes; and they are no authority for determining to what extent the Legislature may limit or regulate this power existing at common law. An illustration of the indefiniteness with which the question has been dealt is to be found in *Re Peyton, supra,* where in the opinion it is said:

"We suppose that all courts authorized to admit attorneys may also disbar them upon sufficient cause being shown; that such power is inherent; that it is a necessary incident to the proper administration of justice; that it must be exercised without any special statutory authority and in all proper cases, unless positively prohibited by statute; and that it must be exercised in the manner that will give the party to be disbarred a fair trial and an opportunity to be heard."

This language is not accurate, if it is meant that the power to disbar is inherent in the courts in the sense that the power to punish for contempt is inherent in them; for in that event the Legislature could not prohibit the exercise of the power, and a positive prohibition of statute would have no effect upon the question. In many of the states statutory enactments have been made providing grounds upon which attorneys may be disbarred,

and the courts have uniformly enforced them without any question as to the power of the Legislature to prescribe grounds for disbarment; for, by the weight of authority, it has been held that the grounds enumerated in such statutes are not exclusive, and that, in addition to the causes prescribed by the statute, the courts may disbar for other grounds existing at common law.  *Beene v. State,* 22 Ark. 149; 4 Cyc. 905.  But these cases are authority for the proposition only that such statutes should be construed as not intending to limit the power of the courts to disbar for the causes enumerated in the statute, and cannot be taken as authority for the proposition that the Legislature has no power to limit the courts with respect thereto.  This latter question has been directly considered in but few cases that we have been able to find, which are as follows:  *In re Eaton,* 4 N. D. 514, 62 N. W. 597; *In re Collins,* 147 Cal. 8, 81 Pac. 220; *Ex parte Schenck,* 65 N. C. 353; *In re Haywood,* 66 N. C. 1; *In re Ebbs,* 150 N. C. 44, 63 S. E. 190, 19 L. R. A. (N. S.) 892, 17 Ann. Cas. 592.

In the Collins case, *supra,* the statute involved was very similar to the one involved in the instant case, except that it contained no prohibition against the courts' disbarring for other causes than those specified in the statute.  The court, after quoting from *Ex parte Yale,* 24 Cal. 241, 85 Am. Dec. 62, the following:

"The manner, terms, and conditions of their admission to practice, and of their continuance in practice, as well as their powers, duties, and privileges, are proper subjects of legislative control to the same extent and subject to the same limitations as in the case of any other profession or business that is regulated by statute"

—said:

"In the plenitude of its power, as announced in this case, the Legislature of the state has plainly defined the causes for which an attorney may be deprived of his right to practice.  This it had the right to do, and its specification of such causes is, in our judgment, conclusive on this court.  And to the extent that an attorney may be disbarred for causes which affect his moral integrity in dealings with others of a purely personal character, and transacted in his private capacity, the statute has provided that it shall be done by the court only when he has been convicted of a felony, or of a misdemeanor involving moral turpitude."

In the North Carolina cases the statutes specifically prohibit the disbarment upon any other grounds than those enumerated in the statute, and the validity of the statute was sustained. The power to disbar is not necessary to the existence of courts; and originally such power was not exercised by them for the reason that parties to a suit were required to appear in person and were not permitted to be heard by attorneys, and, after barristers or counselors at law were permitted in England to appear for parties to an action, they were not appointed by the court, but were called to the bar by the inns of court, and the admission of attorneys has been from time to time in England regulated by statute. *State v. Kirke, supra.* And there appears to be but little division among the authorities that the power to prescribe the qualifications for admission to the bar is a legislative power, and the almost uniform legislation upon the subject in the various states is to prescribe what shall constitute qualifications sufficient to entitle one to be admitted to the bar, and vests the court with jurisdiction to determine when an applicant possesses the prescribed qualifications. Following the establishment of the right of litigants to appear by counsel in court, there came to be recognized a jurisdiction and power in the courts to punish attorneys for misbehaving in the practice of their profession, and to disbar them for official misconduct. The power in the courts to disbar, therefore, is of common-law origin, while the power to admit is of statutory origin. *Ex parte Bradley,* 7 Wall. 364, 18 L. Ed. 366; *State v. Kirke, supra.*

If the power in every case to determine upon what grounds an attorney may be disbarred is a power inherent in the courts in the sense that the power to punish for contempt is inherent, then the grant by the Constitution of judicial functions includes the power to disbar attorneys, and to strike their names from the roll, and the Legislature cannot by statutory enactment prohibit the exercise of this power. The power to punish for contempt is inherent in the courts, because of the necessity of such power in the due administration of justice by them. Does such a necessity for the power to disbar and to determine in all instances what shall constitute causes for disbarment exist? Argument full of

sound reason can be adduced to sustain the proposition that the power to disbar an attorney for professional misconduct or neglect of duty, such as obstructs the administration of justice, interrupts the orderly procedure of the courts, brings reproach and contempt upon them or violates his fiduciary relation toward his client, is so necessary to the full and complete administration of justice that such power cannot be taken from the courts by legislative enactment. But does such a necessity exist when applied to the nonprofessional misconduct of an attorney, such as acts that may show deficiency in character and a lack of proper regard for his duties toward mankind generally, but that do not relate to his professional or official duties as an attorney? We are of the opinion that no such necessity is manifest as will authorize us to declare the statute involved void. That the men composing the bar shall be men of high integrity and of unquestionable character in their private lives as well as in their official and professional lives should not be underestimated; but the office of attorney in the courts is of no more importance in the administration of justice than of the judge who presides over it, and it would not be contended that it is essential to the administration of justice by the courts that the courts shall have the power to determine, independent of control by statute, what acts shall constitute a sufficient cause for removal of a judge from office. The statute here involved undertakes to prescribe a rule that no attorney shall be disbarred for acts in his private life, disconnected with his professional duties, although they involve moral turpitude, until he has been convicted therefor. Independent of any statute upon this question, there is a division among the authorities as to whether at common law such acts constituted a cause for disbarment until after conviction. Mr. Justice Bradley, delivering the opinion of the court in *Ex parte Wall, supra,* states the general rule to be that previous to conviction an attorney shall not be struck off the roll for an indictable offense, committed by him when not acting in his character of attorney; but he sustained the disbarment in that case as falling within an exception to the general rule. A careful review and analysis of the authorities by Mr. Justice Field in the dissenting opinion establishes, we

think, that the weight of authority, both English and American, supports the doctrine that no disbarment should be made under the rule at common law for offenses that had no connection with the party's professional conduct until after indictment and conviction, and to the same effect is 4 Cyc. 910; *State v. Winton, supra.* The statute, in providing that no disbarment shall be made for acts involving moral turpitude, disconnected with any professional misconduct, until after conviction, definitely fixes a rule about which under the common law there was much conflict in the authorities; and it is not clear to us that in so doing the statute interferes with any inherent power of the courts and should be declared invalid. The right to pursue one's chosen calling and for which he has spent a large portion of his life in preparation, and which to an extent may have unfitted him for earning a support for himself and those dependent upon him in a different vocation, is a valuable right, and his legal status relative thereto should be made as definite and certain as is possible, without infringing upon any necessary power of the court.

We therefore hold that in so far as the statute here involved prohibits a disbarment for acts involving moral turpitude, but disconnected with the professional or official duties of an attorney, until after conviction therefor, the same is not violative of the provisions of the Constitution, vesting in various courts of the state judicial power and prohibiting the exercise by one of the three departments of government of the power properly belonging to the other departments.

The recommendation of the referee that the demurrer to the petition should be sustained is confirmed.

All the Justices concur.