### THE METIS.

(District Court, E. D. Virginia. March 17, 1914.)

COLLISION (§ 96*)—VESSELS IN HARBOR—STEAMSHIP AND LIGHTER.

A collision occurred in the daytime in Havana harbor between the steamship Metis, which had just left her loading berth and was passing out between two anchored steamships, and the sail lighter Gen. Prim, appearing from the opposite side of one of such steamships which it was unloading. *Held*, on the evidence, that the Metis took the only practicable way out of the harbor, as other vessels had done; that she gave proper signals of her departure and did all that was possible to avoid collision after the Prim was seen; that the latter was entirely concealed behind the steamship and was solely in fault for the collision because of her failure to give warning or signal.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. § 96.*]

---

*For other cases see same topic & §§NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suit for collision by the Mannheim Insurance Company and others, assignees, against the steamship ·Metis. Decree for respondent.

Harrington, Bigham & Englar, of New York City (T. Catesby Jones, of New York City, of counsel), and J. Westmore Willcox, of Norfolk, Va., for libelant.

Hughes, Little & Seawell, of Norfolk, Va., for respondent. ·

WADDILL, District Judge. The libelants mentioned in the caption, as assignees of the owners of the cargo loaded on board the lighter Gen. Prim, which was sunk in the harbor of Havana, Cuba, on the afternoon of the 20th of March, 1912, in collision with the respondent ship, filed their several libels, which were heard together, against the Metis, to recover for the loss of the cargo aforesaid.

The facts, briefly, are: That at the time in question the Metis had been anchored up in the harbor taking on cargo; and three steamers, the Kronprinzessin Cecilie, the Havana, of the Ward Line, and a Spanish Mail steamer, were severally at anchor lower down in the harbor, and at a point slightly below the San Francisco wharf or pier, which extended out some distance into the channel. These were all large vessels, the Havana a large passenger and freight steamer, with a superstructure which almost entirely obstructed the view of outgoing craft on the inland side of her; and all three were tailing across the channel under the influence of a northeast wind, well-nigh filling the entire passageway; the Spanish ship being furthest to the starboardside of the channel, the Havana slightly to the southward and westward of her, and the Kronprinzessin Cecilie slightly to the southward and westward of the Havana. A short time prior to the collision, the ·Metis, a ship some 340 feet long, which had been taking on a cargo of sugar for three or four days, raised anchor and proceeded down the harbor, intending to pass out to sea between the Cecilie and the Havana, and, just when approaching and about to pass under the stern of the Havana, the Gen. Prim, a sail lighter engaged in unloading freight from the Havana to be taken to the dock, piled high with boxes, emerged from behind and on the port side of the Havana, and but a short distance therefrom, coming into collision with the Metis, as a result of which the Gen. Prim was sunk.

The case turns upon the question of whether the two vessels came into collision as a result of the Gen. Prim's imprudently emerging from behind the Havana, or the failure of the Metis to properly pass out of the channel, as well in the matter of where she should have navigated, as in giving timely warning of her movements, and properly maneuvering immediately preceding and at the time of the collision. The question at issue is one of fact, the correct solution of which determines the responsibility for the disaster.

After much consideration, the court has reached the conclusion that the Metis was not negligent in either failing to pass to starboard round the bow of the Spanish ship, or inshore round the stern of the Cecilie, for the reason that it was impracticable, in the then condition of the harbor, to pass in safety either way, and that it was entirely feasible,

and indeed the only way to go out, to pass in between the Cecilie and the Havana, as other shipping did in passing in and out of the channel at and about the time. There was between the two ships a space of about 200 feet, which was ample to navigate in with prudence. Nor was the Metis in fault in failing to give due and timely signals indicating that she had raised her anchor and was moving down the channel. There is considerable conflict in the testimony in this respect, several witnesses at least testifying that they did not hear such signals from the Metis, and members of the Metis' crew, who were examined shortly after the collision, and when apparently the then pleading did not specifically raise this question, were not interrogated as to these signals; but the preponderance of the evidence, and the better, and that of disinterested witnesses, makes clear the fact that such signals were given, which, being true, relieves the Metis from responsibility for the collision, unless she then failed to exercise due care in discovering the presence of the Gen. Prim, or to navigate prudently and safely after her presence became known. On these two last propositions, the court thinks likewise that the Metis was free from fault. The Gen. Prim was on the opposite side of the Havana from that being approached by the Metis. The Havana was a large passenger ship, high out of the water, with a tall superstructure on her upper deck which obscured the presence of the Gen. Prim, and the fact of her moving out from behind the Havana when it was too late in the exercise of due care and caution on the part of the Metis, or those navigating her, to avoid the collision, was gross negligence on her part. There is some conflict of testimony just when the Gen. Prim was discovered, but it is entirely clear that she neither proceeded aft, alongside of, or emerged from behind the stern of the Havana, until it was too late for the Metis, in the exercise of every precaution at her command, to avoid colliding with her. Upon the presence of the Gen. Prim being discovered, the Metis promptly and vigilantly did everything possible to avoid the collision, but without avail. She stopped, put her engines full speed astern, sounded danger signals, and cast out the port anchor, but all too late to prevent the vessels coming together. The evidence seems undisputed that neither the Gen. Prim nor the Havana, whose cargo she was taking off, gave any signal to passing ships to indicate the Prim's movements, and this neglect was what brought about the collision.

It follows from what has been said that the collision was solely through the fault of the Gen. Prim, and a decree will be entered so ascertaining.