# REPORT OF CASES

### DETERMINED IN THE

# SUPREME COURT

## OF THE STATE OF NEW MEXICO

### JANUARY TERM, 1916

[No. 1924, June 13, 1916.]

## STATE ex rel. WOOD v. RAYNOLDS.

### SYLLABUS BY THE COURT.

1. Each court of superior and general jurisdiction possesses the power to disbar or suspend an attorney, for malfeasance or misfeasance in office, as a necessary incident to its organization, and the legislative department of the government, being only equal and co-ordinate with the judicial, cannot deprive the courts of such inherent power. **Held,** that a district court has the power to suspend an attorney from practice in such court, for fraud and deceit practiced upon such court, upon notice and hearing, until the Supreme Court, upon a hearing had, either disbars such attorney or restores him to his right to practice his profession.

P. 3

2. Courts possess no power to disbar or suspend an attorney upon an ex parte proceeding, but such attorney must be given notice and have full opportunity to be heard and defend.

P. 11

Mandamus by the State, on the relation of Francis E. Wood, against Herbert F. Raynolds, Judge of the Second Judicial District Court of the State of New Mexico. Ordered that writ issue. Hanna, J., dissenting.

E. R. WRIGHT of Santa Fe, for relator.

State ex rel. Wood v. Raynolds, 22 N. M. 1.

REED HOLLOMAN and FRANCIS C. WILSON, both of Santa Fe, for respondent.

## OPINION OF THE COURT.

ROBERTS, C. J.—This is a proceeding in mandamus instituted by the state of New Mexico on behalf of the relator, Francis E. Wood, against the respondent, as Judge of the Second judicial district of this state, to compel the respondent, as such judge, to vacate and set aside a certain order made by him suspending the relator from practicing law in the courts of the Second judicial district until the further order of the court. From the pleadings filed, it appears that relator was attorney for the defendant in a certain cause tried in the district court of Bernalillo county, wherein Ernest Meyers was plaintiff and the Ernest Meyers Company, Incorporated, was defendant. In such case, the defendant pleaded payment of the claim of plaintiff, and at the trial relator, in behalf of his client, introduced in evidence an instrument purporting to be a release of the claim of plaintiff. Upon application of the relator, and upon the strength of the so-called release, the court directed a verdict in favor of defendant. Subsequently, the plaintiff made a motion to set aside the verdict, in which motion it was alleged the so-called release was procured by fraud and false representations, and that no money passed or other consideration was given for such release, and that the defendant and Francis E. Wood, the relator herein, were cognizant of the facts and circumstances under which said release was procured, and, in introducing said release in evidence as proof of payment, the said Francis E. Wood perpetrated a fraud upon the court. The motion to set aside the verdict was verified.

The return to the writ of mandamus herein shows that a copy of the motion above referred to was served upon the relator personally by the sheriff; that the relator filed a motion alleging that the affidavit of plaintiff was false upon its face and filed maliciously and wilfully with the intent and purpose of slandering and injuring relator, and praying that the same be stricken from the files, be-

State ex rel. Wood v. Raynolds, 22 N. M. 1.

cause the facts alleged in said motion reflected upon the honor and integrity of the relator, and were scandalous and impertinent. Relator also prepared and filed a brief in support of his motion, setting up what he conceived to be the facts of the case. A hearing was had upon the motion to set aside the verdict, at which time the relator appeared, and subsequently the court entered an order setting aside the verdict on the ground that it was "obtained by fraud upon court and jury." In the same order it was further provided that—

"the said Francis E. Wood be suspended from practicing in the courts of the Second Judicial District of the state of New Mexico, until the further order of this court, and that the clerk of this court transmit to the Supreme Court of New Mexico the original papers in this case, together with a copy of said opinion, copies of letters filed herein, to the end that that court may take such action in regard to the disbarment of said Francis E. Wood as it may deem fit and proper."

The relator alleged that the action of respondent, in suspending him from the right to practice law in the courts of the Second judicial district, was illegal and void for three reasons: First, because the respondent was without jurisdiction to enter the order of suspension; second, because the proceedings were improperly instituted and prosecuted in that the relator was not notified, and had no opportunity to be heard; third, because no sufficient cause was shown to support the order of suspension. In view of our conclusion, the third ground will not be considered.

[1] The first proposition urged may be narrowed to the question as to whether or not a district court in this state has the authority to suspend an attorney from the right to practice in said district for malpractice or other acts warranting suspension or disbarment, until the Supreme Court pass upon the charges and complaint, disbar, or restore the attorney to his right to practice.

While the order in the present case suspends the relator until the further order of the court, it is apparent that the object in view by the district court was the sus-

pension of the relator until final judgment had been pronounced upon the matter by the Supreme Court.

Under the statutes of this state, a comprehensive system has been adopted with reference to the admission, suspension, and disbarment of attorneys. The power to admit, suspend, and disbar, so far as the statutes of this state are concerned, reposes in the Supreme Court (chapter 8, Code 1915). Under the statutes, no provision is made for disbarment or suspension by the district courts, and no prohibition against such action is found in the statute. On the other hand, under the statute the exclusive power of admission is vested in the Supreme Court, with a right in the district court only to grant a temporary certificate to practice law. On behalf of the relator, it is urged that the district courts have no power to suspend a person duly licensed as an attorney by this court. It is argued on behalf of relator that, while courts have an inherent power to disbar or suspend an attorney for proper cause, that the power to so act rests only in those courts which have the power to admit, and further that it is competent for the Legislature to restrict or abridge the power to disbar or suspend; in other words, that the Legislature may repose the sole power of disbarment or suspension in certain courts to the exclusion of all others.

We believe the cases are fairly uniform upon the proposition that the right to admit to practice and to suspend or disbar are distinct, the former depending upon the statute and the latter an inherent right in all courts of superior or general jurisdiction. Some of the cases, notably the case of Winkelman v. People, 50 Ill: 449, seemingly imply that it is competent for the Legislature to vest the exclusive right of disbarment or suspension in the Supreme Court; but cases so holding imply that it would be proper for the district court to suspend an attorney from practice until the Supreme Court could pass upon the question, as was apparently attempted to be done by the respondent in this case. The great weight of authority, however, is to the effect that each court of superior

State ex rel. Wood v. Raynolds, 22 N. M. 1.

and general jurisdiction possesses the power to disbar or
suspend an attorney as a necessary incident to its organ-
ization, and that the legislative department of the gov-
ernment being only equal and co-ordinate with the ju-
dicial cannot deprive the courts of such inherent power.
The following cases and authorities are fairly uniform
upon the proposition that the two functions, the right to
admit and the right to disbar, are distinct, the former de-
pending upon statute and the latter being an inherent
right possessed by all courts of superior and general juris-
dictions: Weeks on Attorneys at Law, § 80, p. 140; State
v. Kirke, 12 Fla. 278, 95 Am. Dec. 314; In re Mills, 1
Mich. 392; In re Robinson, 48 Wash. 153, 92 Pac. 929,
5 L. R. A. (N. S.) 525, 15 Ann. Cas. 415; State v. Mo-
sher, 128 Iowa, 82, 103 N. W. 105, 5 Ann. Cas. 984; Ex
parte Bradley, 7 Wall, 364, 19 L. Ed. 214; 2 R. C. L. 81.

In Weeks on Attorneys at Law, supra, the author says:

"As an attorney at law is an officer of the court, the latter
may exercise its summary jurisdiction over him to the ex-
tent of depriving him of his office, and striking his name
from the rolls. This the court may do in cases of malprac-
tice, though the offense be not indictable. Attorneys may
forfeit their professional franchise by abusing it, and a
power to exact the forfeiture must be lodged somewhere.
Such a power is indispensable to protect the court, the ad-
ministration of justice, and themselves. Abuses must neces-
sarily creep in, and attorneys themselves are vitally con-
cerned in preventing the vocation from being sullied by the
misconduct of unworthy members. The court, too, has this
power on the ground of self-protection, outside of the com-
mon law and outside of the statutory doctrine of contempt,
in cases where an attorney has shown himself unfit to be one
of its officers; and such unfitness may be displayed not only
by moral delinquency, but by acts calculated and intended to
injure the court. But charges merely affecting a person's
character as a private citizen, and not his official character
as an attorney, will not support an application to strike from
the rolls.

"The power to strike from the rolls is inherent in the
court itself. No statute or rule is necessary to authorize the
punishment in proper cases. Statutes and rules may regu-
late the power, but they do not create it. It is necessary for
the protection of the court, the proper administration of jus-
tice, the dignity and purity of the profession; and for the
public good and the protection of clients. And where cer-
tain grounds are specified by the statute, this does not neces-

sarily exclude striking from the rolls for causes not specified. A statute is not to be construed as restrictive of the general powers of the court over its officers. Gross offenses, such as deceit, malpractice, crime, or official delinquency or misdemeanor are grounds for striking from the rolls, but not every moral delinquency."

In State v. Kirke, supra, the facts are in point. It appears that in Florida the right to admit to practice is vested by statute in the circuit courts, and admission in one of them admits to all the courts of the state. A county judge disbarred the relator, who brought mandamus to obtain reinstatement, and one of the objections urged to the disbarment was that the right to practice in the county court did not emanate from that court, which, therefore, could not have the requisite authority to disbar the relator. After pointing out the distinction above urged, the court said:

"Justice Nelson, in the very recent case of Ex parte Joseph H. Bradley, said: 'We do not doubt the power of the court to punish attorneys for misbehavior in the practice of the profession. This power has been exercised and recognized ever since the organization of courts.' This was said in reference to the disbarring of an attorney, the matter then under investigation. The right of the courts to exercise this power existed before they controlled the subject of admission. One was a common-law power, the other a power derived from statute. The rule applicable to the construction of statutes is that an act in derogation of the common law is to be construed strictly. In this case, however, we do not think that the statute has anything to do with the power of the courts over an attorney after he had been admitted. It does no propose to affect it, and no principle of construction need be invoked. It was urged at bar that the county court was not such a court as possessed this power, and that to admit its power to this extent is to admit its power to control the circuit and Supreme Courts in the matter. Each court possesses this power as a necessary incident to its organization. The county court having disbarred an attorney does not affect his right to practice in the other courts, and if he has been admitted in the county and Supreme Courts, and has become entitled to the rights of an officer there, the action of the circuit court can only affect his right to practice in that court; because the power to admit is one thing, and the power to disbar another. The one is confined to the circuit courts, and the other is possessed by the county and Supreme and circuit court."

State ex rel. Wood v. Raynolds, 22 N. M. 1.

It will be noticed that the action taken by the county judge was disbarment, whereas in the case at bar the relator was suspended and the record referred to the Supreme Court for final action. The order of suspension, as did the order of disbarment, in the Kirke Case, was only to the suspension in the district over which respondent presides. It does not affect relator's right to practice in other courts nor in the Supreme Court. It did not pretend to strike the name of relator from the rolls of the Supreme Court. In so far as the case of State v. Kirke, supra, is applicable and in point, therefore, the respondent was acting strictly within his inherent right and authority. Without the statute above referred to, there could be no question as to the power of the district and Supreme Courts to act in such cases, and under the statute the power conferred upon the Supreme Court, assuming that such court has the inherent power to disbar, is merely cumulative and in effect legislative approval or confirmation of the inherent power of that court, which existed in the absence of legislative action. The constitutional power of the Legislature to control courts in the exercise of their inherent rights has been the cause of some diversity of opinion in the adjudicated cases. In Oklahoma, the Legislature enumerated the causes for which an attorney could be disbarred or suspended and prohibited disbarment or suspension for any other cause. Section 265, C. L. 1909, was construed by the Supreme Court of that state in Re Saddler, 35 Okl. 510, 130 Pac. 906, 44 L. R. A. (N. S.) 1195, and the court sustained the statute, in so far as it prohibited the disbarment of an attorney for acts disconnected with the practice of his profession until after conviction, on the ground that to disbar an attorney for acts committed outside his profession was not an inherent right, so that it did not amount to a deprivation by the Legislature of such right. But the court carefully restricted its decision to that point, and affirmed the doctrine that the inherent right existed and could not be taken from the courts, in the following language:

"Argument full of sound reason can be adduced to sustain the proposition that the power to disbar an attorney for professional misconduct or neglect of duty, such as obstructs the administration of justice, interrupts the orderly procedure of the courts, brings reproach and contempt upon them or violates his fiduciary relation toward his client, is so necessary to the full and complete administration of justice that such power cannot be taken from the courts by legislative enactment. But does such a necessity exist when applied to the nonprofessional misconduct of an attorney, such as acts that may show deficiency in character and a lack of proper regard for his duties toward mankind generally, but that do not relate to his professional or official duties as an attorney? We are of the opinion that no such necessity is manifest as will authorize us to declare the statute involved void. That the men composing the bar shall be men of high integrity and of unquestionable character in their private lives as well as in their official and professional lives should not be underestimated; but the office of attorney in the courts is of no more importance in the administration of justice than of the judge who presides over it; and it would not be contended that it is essential to the administration of justice by the courts that the courts shall have the power to determine, independent of control by statute, what acts shall constitute a sufficient cause for removal of a judge from office. The statute here involved undertakes to prescribe a rule that no attorney shall be disbarred for acts in his private life, disconnected with his professional duties, although they involve moral turpitude, until he has been convicted therefor. * * *

"The statute, in providing that no disbarment shall be made for acts involving moral turpitude, disconnected with any professional misconduct, until after conviction, definitely fixes a rule about which under the common law there was much conflict in the authorities; and it is not clear to us that in so doing the statute interferes with any inherent power of the courts and should be declared invalid. * * *

"We therefore hold that in so far as the statute here involved prohibits disbarment for acts involving moral turpitude, but disconnected with the professional or official duties of an attorney, until after conviction therefor, is not violative of the provisions of the Constitution, vesting in various courts of the state judicial power and prohibiting the exercise by one of the three departments of government of the power properly belonging to the other departments."

However, it should be noted that the same court (with special judges sitting) decided in a majority opinion, in State Bar Commission v. Sullivan, 35 Okl. 745, 131 Pac. 703, 711, L. R. A. 1915D, 1218, that the Legislature could not constitutionally deprive the courts of their inherent powers. Upon the motion for rehearing, the majority of the court said:

State ex rel. Wood v. Raynolds, 22 N. M. 1.

"Our own Constitution emphasizes the independence of the three great departments of government, each from the other, by section 1 of article 4, reading as follows: 'Section 1. The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.' It may be difficult to lay down any general rule, applicable to all cases, defining the exact boundaries between the power of the courts establish by the Constitution and the power of the Legislature, with reference to the admission to practice and disbarment of attorneys, who are officers of the courts. There may be a broad field of operation for proper legislative enactment upon this subject without encroaching upon the inherent powers of the court to protect its own dignity from contemptuous assault. The Legislature, in creating statutory offenses meriting disbarment, may conceivably prescribe proper rules of limitation, especially in courts of statutory creation. Without attempting to decide anything but the pending case, we lay down the principle that the Legislature has no power to fix a limitation, either as to time or upon the power of this court, that could be set up in bar of this prosecution. It would be intolerable if the attorneys, who are officers of the court, could treat the court with pronounced disrespect and be immune from disbarment by reason of the lapse of short time or other technicality. This court is one established by the Constitution, and it is not competent for the Legislature to abolish it directly or indirectly, nor can it take away from this court those powers which inhere in similar courts at common law and which vested in it by virtue of its very establishment by the Constitution. * * *

"For the reasons just stated, we must also overrule the contention that the court is limited in its disciplinary power to the grounds and remedies indicated by statute. The statutory provisions are wise, but are merely cumulative; and do not impair the inherent constitutional power of the court to deal with such contempts in a proper, though nonstatutory way. In Wyoming an attorney was charged with applying vile epithets to the court out of its hearing, and the defendant was disbarred. The court, per Lacey, C. J., said: 'Our statute provides that this court "may revoke or suspend the license of any attorney or counselor at law to practice therein: * * * fifth, for the wilful violation of any of the duties of attorney or counselor.' The statute does not define the duties of any attorney or counselor. We have also a general statute adopting the "common law of England, as modified by judicial decision," and expressly providing that that common law "shall be considered as of full force until repealed by the legislative authority." Comp. Laws, p. 193, § 1. The duties of an attorney in this territory are therefore the same as under the common law, his first duty being to the

10     SUPREME COURT OF NEW MEXICO,

State ex rel. Wood v. Raynolds, 22 N. M. 1.

court of which he is an officer. "The obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not merely to be obedient to the Constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct towards the judges personally for their judicial acts." Bradley v. Fisher, 13 Wall, 335, at page 355, 20 L. Ed. 646. The fountain of the power of the courts to remove attorneys as exercised at common law, is St. 4 Henry IV, c. 18, which is as follows: "And if any such attorney be hereafter found notoriously in any default of record or otherwise, he shall forswear the court and never after be received to make any suit in any court of the king. They that be good and virtuous and of good fame shall be received and sworn at the discretion of the justices, and, if they are notoriously in default, at discretion may be removed upon evidence either of record or not of record." It seems to us that the power to remove under our statute and the causes sufficient for removal, are as broad and comprehensive as at common law. Further, so far as questions now arising in this case are concerned, there is nothing in our statute, either expressly or by implication, repealing the common law.' In re Brown, 3 Wyo. 121, 4 Pac. 1085, 1087, 1088."

It is true that the latter case applied to acts constituting a libel on the court and was obviously in contempt of the court, but the general principles enunciated are applicable to the case at bar.

In State v. Wilson, 11 Or. 456, 5 Pac. 337, 50 Am. Rep. 486, 489, the court said:

"At common law, attorneys were, as now under the statute, officers of the court; and as such they were liable to be punished in a summary way, either by attachment or having their names struck out of the roll of attorneys, for any ill practice attended with fraud and corruption, and committed against the obvious rules of justice and common honesty. Bacon's Abridg. 'Attys.' II. This is an inherent power residing in the court without the aid of any statutory enactment. The exercise of the power may be, as it ofen is, regulated by statute, but the statute does not create it. Its existence is necessary and incidental to the court for its own protection, to secure the proper administration of justice, to maintain the prestige of the profession for integrity, to conserve the public good, and to protect clients from malpractice attended with fraud and corruption. Ex parte Smith, 28 Ind. 47; Sanborn v. Kimball, 64 Me. 140; Fletcher v. Daingerfield, 20 Cal. 427; In re Wooley, 11 Bush (Ky.) 95. It is therefore laid

State ex rel. Wood v. Raynolds, 22 N. M. 1.

down by the text-writers upon this subject, as deducible from the practice and decisions of the courts in such cases, that a court has the inherent right to exercise this summary jurisdiction over its attorneys as officers of the court, to require and compel them to deal justly and honestly with their clients, and to punish them by fine and imprisonment for contempts or misconduct in their office, and, in cases where the malpractice or misconduct in their professional capacity showed them to be unfit persons to practice the law, to strike their names from the roll. 1 Tidd's Practice, 89 (9th Ed.); Archbold's Practice, p. 148 (Chitty's Ed.)"

The right to suspend or disbar being an inherent right in the courts, it would follow that the Legislature is without power to destroy or abridge this right. We therefore are of the opinion that, notwithstanding the statutory provisions on the subject, the district court had the power to suspend the relator from practicing law in the courts of the Second judicial district until the further order of the court, pending a hearing and determination in this court of the question as to whether or not the relator should be permanently disbarred from practice.

[2] Assuming that the district court had the power in this case to suspend, the question remains as to whether or not the relator was entitled to notice, and an opportunity to defend. In other words, was it essential that specific charges should have been filed upon which he should have had an opportunity to appear and defend, or, stated in other words, was it proper to disbar the relator without his being informed that such was the purpose of the proceeding and being accorded the right to appear and defend? It is insisted on behalf of respondent that the relator did appear upon notice, and offered such matters in defense as were possible. The record, however, does not support this contention. The object of the proceedings instituted in the lower court was not to suspend or disbar the relator, but was for the sole purpose of setting aside and vacating the verdict of the jury and securing to the plaintiff in that case, Ernest Meyers, a new trial. It is true, as heretofore stated, that the relator filed in that case a motion to strike out the motion to vacate the verdict because the same was scandalous and imperti-

nent, and reflected upon his honor and integrity; and that he signed an affidavit which was used upon the hearing upon the motion; but in this affidavit he stated that, in view of the charges in the motion which reflected upon him, he would not further participate in the case, but that other counsel would appear. In the affidavit aforementioned, relator set forth all such facts and circumstances as were within his knowledge, which he assumed tended to show a lack of fraud in the premises.. But it is apparent from the record before this court that, in the pleadings and evidence adduced, no intimation was given to the relator that he might be disbarred in the proceeding then pending before the court.

The right of an attorney to practice his profession is an honorable right, and represents years of study and preparation. To disbar or suspend him from the practice of his profession means the ruination of his professional career, and casts upon his name and standing a stigma which can never be effaced. In this case, the question as to whether or not the relator practiced fraud upon the court depended upon his knowledge as to the manner in which the release in question was procured and the purpose thereof. Upon this question he had a right to be heard, not incidentally in connection with the motion filed in that case to vacate and set aside the verdict of the jury, but in a direct proceeding instituted in court for the purpose of disbarring or suspending him, because of the alleged fraud practiced upon the court. It may be that, in the proceedings in the cause then pending in the district court, the relator presented to the court every fact and circumstance within his knowledge, tending to show his innocence of any culpable wrongdoing. But this is aside from the question.

In Peyton's Appeal, 12 Kan. 398, appellant was ordered disbarred in a proceeding wherein he was charged with contempt and deceit; and the court held that appellant had no sufficient notice that the proceeding was for the purpose of disbarring him, and therefore the order of suspension was void.

In People ex rel. Beattie v. Kavanaugh, Judge, 220 Ill. 49, 77 N. E. 107, 110 Am. St. Rep. 223, relator had been suspended by respondent because the former had not made atonement for the sentence imposed in a contempt proceeding before the respondent. It was held that the statute provided exclusive methods of suspending attorneys and that this was not one of them, in effect finding that the proceeding was irregular and without "due process of law," so far as relator was concerned. In People v. Turner, 1 Cal. 143, 52 Am. Dec. 295, 301, no notice whatever was given of the contemplated act of the court to suspend relator. It was held that relator was entitled to full notice and an opportunity for explanation, apology, or defense, and that the rendition of a judgment of suspension by the court, ex parte, was without authority of law. At page 859, in the note to the case of Burns v. Allen, (R. I.), reported in 2 Am. St. Rep. 844, will be found a number of cases supporting the doctrine that courts possess no power to disbar or suspend an attorney upon ex parte proceedings, but such attorneys must be given notice and have full opportunity to be heard and defend themselves. See, also, Ex parte Bradley, 7 Wall, 364, 374, 375, 19 L. Ed. 214.

. Respondent cites In re Randall, 11. Allen (Mass.) 473, in support of his action in this case. In that case the petitioner appeared before the court to answer to the charges of misconduct for malpractice which had been brought to the attention of the court by the grand jury. But, while there were no formal written charges preferred against the petitioner, he fully understood their nature and character, and had ample time and opportunity to be heard thereon, and appeared and answered said charges voluntarily and knew the nature and object of the proceedings, which case was further complicated by other facts not necessary to mention, but we do not regard it as controlling in the case at bar, nor are the other citations made by the respondent.

We believe that the relator was justified in assuming that the object of the hearing was to obtain a new trial,

and that he had no reason for believing that he was called upon to make full defense to the matters charged against him in the motion therefor. Hence, the court should have required relator, in a separate proceeding and by proper process, to defend the charge relating to his misconduct, in the event it thought the same was proper, and not to institute a suspension proceeding and carry it on in a proceeding incidental to a civil cause pending before him.

In view of the facts we are constrained to hold that the relator was not accorded due process of law, and therefore the writ of mandamus will issue, compelling the respondent to vacate and annul the order of suspension of which the relator complains; and it is so ordered.

PARKER, J., concurs.

### DISSENTING OPINION.

HANNA, J. (dissenting)—I cannot agree with the last proposition considered in the foregoing opinion, that is, as to what is said upon the subject of notice.

My first ground of objection is largely one of fact. While conceding that the relator was entitled to notice, it would seem, under the facts of this case, that he had at least waived his rights in this respect. It is true that the charge of fraud or deceit arises for the first time upon the consideration of the motion to set aside the verdict, and also true that this motion did not inform the relator that he would be subjected to the penalties of suspension or disbarment. Nevertheless, the relator made answer in person to the charges which were directed against him, and squarely met the issue as to the truth or untruth of these charges, the facts being found against him.

The entire proceeding, as it addresses itself to my mind, and there is little or no authority to be found which will aid in a consideration of the question, is to be likened to an act of contempt, committed within the presence of the court. The court had full knowledge of the facts which had become a matter of record, and it seems

to me to be putting form before-substance to say that the court should have commenced new proceedings by a rule to show cause, and inquired into the same facts for the sole purpose of determining upon a question of suspension or disbarment.

.This court, in its majority opinion, is attaching too much importance at this stage of the proceedings, to the rights of relator in the matter of the technical objection which he here urges. Particularly is this true in view of the fact that these technical objections can be raised later, when the matter comes before us upon its merits. This phase of the matter is of no particular importance, except as it may be controlling upon the discretion to be exercised by this court in the issuance of the writ here applied for. A writ of mandamus not being a writ of right, and the issuance thereof being a matter within the discretion of the court, this court closely approaches forbidden ground in permitting the use of the writ for the review of a question decided upon by the district court, which, at most, in my opinion, can only be considered an erroneous exercise of jurisdiction.

The majority opinion, as stated, attaches too much importance to the rights of the individual, and fails to give adequate consideration to that larger aspect of the question here involved, which arises out of the relation of an attorney toward the court and the profession. The same technical procedure that might be required in criminal cases cannot be said to properly belong to the field occupied by proceedings for disbarment or suspension. The right of an attorney to practice law may be of great public importance, and for this reason he would not have the same right to be heard in technical objections that other individuals would be permitted to raise, when haled before the court on charges growing out of ordinary infractions of the law. There is said to be an inherent right in all courts, not only to disbar attorneys at law, but to suspend temporarily, and this right is said to exist because of the necessity existing that courts may protect themselves against the conduct of attorneys, that the ad-

ministration of justice may be properly carried on, and that clients may be protected against fraudulent or other objectionable conduct by attorneys. See Thatcher v. United States, 212 Fed. 800, at 806, 129 C. C. A. 255.

While not many cases in point are cited or found, I refer to a few which are somewhat instructive. In the case of Randall, Petitioner, in Mandamus, 11 Allen (Mass.) 473, it is said, concerning the elements of discretion in the issuance of the writ of mandamus, that the court will not issue the writ, although the attorney had been disbarred from practice without any previous formal written charge of misconduct against him, and with no summons or other process to bring him before the court, he having appeared and having had a full hearing on the merits, and that on the facts found the removal was proper. As I said, the cases are not similar in point of fact; but, as pointed out in that case, the court was of the opinion that in no just or proper sense could the proceedings be deemed criminal proceedings in which a party had the right to insist on a full, formal and substantial description of the matter with which he is charged, nor was it essential to the validity of the judgment of the court that it should be founded on legal process, as the term is understood and used in the Magna Charta, or in the Declaration of Rights, in this connection the court saying:

"At common law, an attorney was always liable to be dealt with in a summary way for any ill practice attended with fraud or corruption, and committed against the obvious rules of justice and honesty. No complaint, indictment, or information was ever necessary as the foundation of such proceedings. Usually they are commenced by rule to show cause, or by an attachment or summons to answer; but these are issued on motion or bare suggestion to the court, or even on the knowledge which the court may acquire of the doings of an attorney by their own observation. No formal or technical description of the act complained of is deemed requisite to the validity of such a proceeding. Sometimes they are founded on affidavit of the facts, to which the attorney is summoned to answer; in other cases, by an order to show cause why he should not be stricken from the roll; and, when the courts judicially know of the misconduct of an attorney, they will, of their own motion, order an inquiry to be made

State ex rel. Wood v. Raynolds, 22 N. M. 1.

by a master without issuing any process whatever, and, on the coming in of his report, will cause his name to be stricken from the roll."

Had the district court in this case attempted to disbar the relator, possibly a different question would be presented; but even in such case the discretion of this court in the issuance of the writ would rest somewhat upon the question of whether or not the district court had done a manifest injustice, which involves very largely the question of whether or not the attorney was heard in his defense, and was charged with the acts complained of in such manner as to bring home a knowledge of the character of his alleged misconduct. In the case of State v. Kirke, 12 Fla. 278, 95 Am. Dec. 314, the court has much to say upon the question of discretion in applications for the writ of mandamus and is in point on that element of this matter.

In Ex parte Wall, 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552, quoting from an opinion by Mr. Justice Field, in the case of Randall v. Brigham, 7 Wall. 523, at 540, 19 L. Ed. 285, it is said:

"The informality of the notice, or of the complaint by letter, did not touch the question of jurisdiction. The plaintiff understood from them the nature of the charge against him; and it is not pretended that the investigation which followed was not conducted with entire fairness. He was afforded ample opportunity to explain the transaction and vindicate his conduct."

In conclusion, I am of the opinion that the same strict rules which might be applicable to a disbarment proceeding are not applicable to this case which involves the element of suspension only, temporary in its operation, and only to have force and effect until such time as this court can hear the case for disbarment on its merits. In other words, I believe that the district court has jurisdiction, even to summarily order the suspension of an attorney who has been guilty of the practice of alleged fraud or deceit, during the conduct of a case in court, without citing the attorney to show cause, and that the discretion of this

court in the issuance of its writ of mandamus is not adequately appealed to by the facts presented for our consideration.

I therefore dissent.